# CHARLESTON.

## BENNETT *v.* PIERCE.

Submitted September 9, 1901. Decided December 18, 1901.

1. EQUITY—*Specific Performance—Good Title.*

In case of a suit in equity to enforce specific performance of an executory contract, if the title of the vendor is questioned on reasonable ground, the vendor must show good title; but in a suit to enforce a lien reserved in a deed conveying the land for purchase money, the purchaser must clearly show actual defect of title, or a suit pending or threatened involving it, and the ground on which the cloud rests. (p. 605).

2. DEED—*Color of Title—Statute of Limitations.*

A deed though void is good color of title under the statute of limitations. (p. 608).

3. COPARCENER—*Ouster—Stranger's Possession.*

If one co-parcener or tenant in common conveys the entire tract to a stranger, and the stranger takes actual possession claiming the whole, it is an ouster of the other co-parceners or tenants in common, and the stranger's possession is adversary to them, and the statute of limitations runs in his favor. (p. 609).

4. STATUTE OF LIMITATIONS—*Good Title.*

    When the period of the statute of limitations as to recovery of land has run out, the statute vests good title in the occupant against his adversary. (p. 610).

5. CONVEYANCE—*Title of Grantor—Relief.*

    Though at the date of a conveyance of land retaining a lien for purchase money the title of the grantor is defective, yet if at the time when he asks a decree to enforce that lien in a suit brought for the purpose, the title has become good and valid, the original defect of title will not debar the grantor from such relief. (p. 610).

Appeal from Circuit Court, Barbour County.

Suit by Maggie Bennett against W. N. Pierce. Decree for plaintiff, and defendant appeals.

*Affirmed.*

J. Hop Woods, for appellant.

A. G. Dayton and Fred O. Blue, for appellee.

BRANNON, PRESIDENT:

This is a chancery suit in the circuit court of Barbour County brought by Maggie Bennett against W. N. Pierce to enforce a lien for purchase money reserved in a deed of conveyance from Bennett to Pierce, resulting in a decree against Pierce for the purchase money and subjecting the land to sale, from which decree Pierce appeals.

Pierce resists payment of the purchase money on the ground of defects in the title to the land conferred by the deed from Bennett to him. This case was once before in this Court, as will be seen in 45 W. Va. 654. It was there stated that two of the deeds were defective as to married women, heirs of John Dalton, because of insufficient certificates of acknowledgment. As to four of the said *femes,* Elizabeth, Ingaby and Martha Dalton and Airy Barnes, the defect alluded to has been cleared up, so that Pierce can be in no peril therefrom. Elizabeth and Ingaby Dalton have by a new deed made since the former decision of this Court, and before the last decree of the circuit court, cured the vice of their former deed. Martha was not an heir, but the wife of an heir, and is dead, so that there is no danger from her claim. Airy Barnes died some six years before the decree, and her husband some fourteen years before, and the statute of lim-

itations vests in Pierce a good title to her interest. As to Phoebe Male, whose deed was defective for bad acknowledgment, her husband died over fourteen years before the decree, and she sixteen years before the decree, and the statute of limitations cured Pierce's title as to her interest. Besides, persons purporting to be her heirs have since made a deed curing her defective deed. It is said there is no proof they are such heirs, but the deed recites them to be such heirs and there is no proof to the contrary. In addition to all this a chancery suit in 1889 was brought by J. A. Bishop, to which Elizabeth Dalton, Ingaby Dalton, Airy Barnes and Martha Dalton were parties, and the bill alleged that R. C. Bennett, from whom Maggie Bennett derived title, was the owner of this land by purchase from said parties as heirs of John Dalton, charging that all the purchase money had been paid by R. C. Bennett to them, and the bill was taken for confessed, and a decree made upon those allegations, and R. C. Bennett and Maggie Bennett were parties, and that decree is *res judicata* to show against said Elizabeth, Ingaby and Martha, and their heirs as privies in estate, that they had passed all their title to R. C. Bennett. There cannot be any peril as to the interests of Elizabeth and Ingaby Dalton, nor as to Martha, if she had had an interest, which in fact she had not as an heir, only as contingent doweress in a sixteenth heir interest, which perished with her death. By an amended answer filed by Pierce after the case returned from this Court to the circuit court he named all the sixteen children of John Dalton and showed that some were dead leaving heirs, and alleged the possibility, or the probability, that some of their interests had not been effectually passed to R. C. Bennett or Maggie Bennett, and that Pierce might be in danger therefrom. That amended answer is a laborious effort to name very, very many children of John Dalton, the ancestor, once owning this land, and his grandchildren, the children of dead heirs. This answer attempts what might be called a labyrinth of confusion of title, demanding that Maggie Bennett show forth infallibly a perfect title through this endless lineage or genealogy, and suggesting defects in deeds not brought forth before. Here come in certain legal principles constituting an answer to all this suggestion of defective title. Pierce is not resisting the enforcement of an executory contract. If he were he might call upon Bennett to assume the burden of proving that she had a perfect title. He might successfully cite such cases as

*Griffin* v. *Cunningham,* 19 Grat. 471, and *Spencer* v. *Sandusky,* 46 W. Va. 582, and *Parsons* v. *Smith, Id.* 728, holding that a purchaser by executory contract will not be compelled to accept a doubtful title, and that the vendor must remove clouds and show good title; but Pierce after having for five years possession under an executory contract, with ample time and opportunity to investigate the title, closed that contract by accepting from Bennett a deed conveying the legal title, and under these circumstances the burden of proof shifts, as to defects from the shoulders of the vendor to the shoulders of the vendee. Before a purchaser who accepts a deed conveying legal title can resist the payment of the purchase money, he must show clearly that the title is defective. He cannot stand off and suggest doubts, raise shadows or possibilities of defects of title, and compel the grantor to clear them up. He must show defect of title himself. Pierce had been in possession before this decree upwards of ten years without any attack upon his title, without molestation or disturbance in his actual possession and quiet enjoyment, without eviction or suit or threat of suit for eviction. The law says that a purchaser who accepts a deed with warranty must show that his title is questioned by a suit actual or threatened or actual defect of title, an outstanding, still subsisting, adverse title. *Kinport* v. *Rawson,* 29 W. Va. 487. When we say that the title is questioned by a threatened suit, it must be specified what is the ground of the threatened suit, what is the portent of danger. The mere fact that some one has asserted a claim to the land, and that such claim is generally known even, is not enough, as shown by the authority just cited. These principles are laid down in that case and in *Wamsley* v. *Stalnaker,* 24 W. Va. 214, and *Heavner* v. *Morgan,* 30 *Id.* 335, and *McClaugherty* v. *Croft,* 43 *Id.* 272. I know it can be said in this case that Maggie Bennett's covenant of warranty is not good security, she being a married woman, and alleged to be insolvent; but can a purchaser refuse to pay the purchase money unless he shows the dangers as above specified? I think not. But let us say that there could be question about this, though I think there cannot be. What then? I answer that the statute of limitations, beyond question, amply protects Pierce. R. C. Bennett in February, 1880, purchased the interests of a number of the heirs under a deed purporting to convey the legal title, and then went into actual possession, and in the year 1884 and 1882, took deeds from other

heirs, and his claim was to the whole tract and all the interest therein, and his title passed to Maggie Bennett, and from her to Pierce. The Bennetts had been in possession more than ten years before the land was sold by them to Pierce; at any rate, there was a continuous, open, notorious, exclusive, possession by R. C. Bennett, Maggie Bennett and Pierce for more than ten years prior to the decree. In fact, as Bennett acquired, I may say, all the interests by deeds made in 1882, 1883 and 1884, and had exclusive possession, their posession tacked to four years of Pierce's possession, ending in 1894, would bar all the rights of the heirs, even treating the subject under the law of adverse possession as between tenants in common; for it is well settled that a tenant in common or parcener who occupies common property notoriously as the sole owner, using it exclusively, taking to his own use the rents and profits, or otherwise exercising over it such acts of ownership as manifest unequivocally intention to claim exclusive property and disavow any right in his coparceners, disseises his co-parcener, and that his possession will be adverse to them. If his intention is to hold property exclusively as his own, and his co-parceners have knowledge of such intention, there is a disseisin and the possession is adverse. *Cooey* v. *Porter,* 22 W. Va. 120; *Justice* v. *Lawson,* 46 *Id.* 163. Where one co-parcener or tenant in common conveys by deed his interest to another, though the deed be ineffectual to pass the legal title, though void, yet it is color of title, and ten years' possession under it would bar the co-parcener or tenant making the deed. *Swan* v. *Young,* 36 W. Va. 57; *Swan* v. *Thayer,* 36 *Id.* 46. Surely such possession under such deed would be adverse to the grantor making it; but as to all these Dalton heirs we may say that in 1894 the possession of the Bennetts and Pierce tacked together had barred their claim under the law above stated, because that possession was for at least ten years, from 1884 to 1894, if not from February 18, 1880, when R. C. Bennett obtained a deed for eight and a half shares, exclusive of the rights of anybody, exclusive of the rights of all the heirs. By the year 1884 the Bennetts had acquired all the interests, or claimed all exclusively, and as all had made deeds, surely we may say that they knew of the character of such claim, knew that Bennett claimed in exclusion of them. This knowledge on their part that Bennett claimed exclusively, and the manifest proposition that Bennett intended so to claim, coupled with Bennett's pos-

session and that of Pierce, show total ouster of any of those co-tenants and good title under the statute of limitations. As to most of these heirs the possession of the Bennetts, without bor-rowing any of Pierce's possession to help, has created a bar. But suppose there could be doubt about what I have just said, that is, that in 1894 any possible claim of any of the heirs had been lost under the statute of limitations, then what? I hold that it is clear that at the date of the decree, 26th of February, 1901, Pierce's possession alone, without taking possession before that date held by the Bennetts, would effectually bar all Dalton's heirs. Suppose we say that the Bennetts had not barred them up to the date of the sale to Pierce, 11tth of November, 1890, or that their joint possession had not perfected the bar in 1894, ten years after the date of the last deed to Bennett, then I hold that from the date of Bennett's purchase of the entirety to the date of the decree was more than ten years. Treating Bennett in the most favorable light for the theory of a still subsisting, outstand-ing interest in some heirs, that is, as still a tenant in common, we find Bennett, more than ten years before the decree, selling to Pierce the entire tract, and we find Pierce taking actual posses-sion and holding it more than ten years before the decree, recog-nizing no one's right, claiming the whole. There is no intimation to the contrary. Here we apply the well kown principle of law, that the sale or conveyance to a stranger by one tenant in com-mon of the entire estate, and the grantee enters into possession under a deed claiming title to the entirety, and openly exercises acts of exclusive ownership, works a disseisin, and makes the possession of such purchaser adverse to his vendor's co-tenants. *Parker* v. *Brast,* 45 W. Va. 399; 1 Am. & Eng. Ency. L. (2d Ed.) 806; *Parker* v. *Proprietors,* 37 Am. Dec. 121; Buswell, Adverse Poss., s. 30.

It will be said that some of these heirs were married women, or infants, perhaps. We do not know from the record just when the husbands died, or if an heir died whether his children were infants, and if so when they ceased to be. The answer I make to this suggestion is this, that as shown above Pierce is holding under an executed contract, a deed, not an executory contract, and he holds the affirmative on the assertion, or rather the sug-gestion, that there are defects, and he must prove every element essential to establish that there is an outstanding and still-subsisting interest, not barred by limitations. When one is de-

fending on the statute of limitations he must establish the facts necessary to apply the statute; but here Pierce alleges defects, and he ought to show that the married woman is living, and that she is still under the saving of coveture, or if not, when the saving ceased, or in the case of an infant, he ought to show the facts necessary to apply the saving clause in favor of an infant; in other words, he ought to show forth the facts to ena- ble the court to say that there is still an unbarred interest. He asserts the fact. He should show it, show all the facts necessary to show that there is an actual defect. When we see that all danger from defective deeds has been removed as to Elizabeth Dalton, Ingaby Dalton, Martha Dalton, Airy Barnes and Phoebe Male, we cannot say that there is any other interest still a valid and subsisting one to endanger Pierce. The Bennetts and he have had undisturbed, peaceable possession for twenty-one years, free from suit or threat of suit, and if we could say that there was a cloud, it would be of the very remotest danger. But time has dissipated all clouds. Pierce never had a moment's dis- turbance, and therefore we cannot say the statute has given him repose, but we can say safely that the statute has conferred upon him perfect title, and a title by limitation is as good as a title by perfect deed. *Parkersburg Industrial Co.* v. *Schultz,* 43 W. Va. 470; *Adkins* v. *Spurlock,* 46 *Id.* 139. If the title by limi- tation, or otherwise, is good at the date of the decree, though not good at the date of the institution of the suit for purchase money, that is enough. *McClaugherty* v. *Croft,* 43 W. Va. 270. All that Pierce can demand is good title. When he filed his first answer he only asked that the title be made perfect. In addi- tion to what has been said above as to the statute of limitations, and as to the Bishop decree conferring good title, and deeds made curing defects, Bennett has, since the former decision, taken great pains to have numerous deeds made to perfect the title, if such deeds were necessary; but this does not seem to sat- isfy Pierce; for after his first answer asking only that the title might be perfected, and after all these steps had been taken by Bennett to remove shadows, only shadows under the statute of limitations, Pierce changed his mind and filed an amended an- swer asking that the sale by Bennett to him be rescinded, and he be decreed a repayment of the purchase money, and an allow- ance for improvements, and that the same be decreed a lien upon the land and the land sold therefor. The circuit court refused

him this relief, and decreed that he pay Mrs. Bennett the balance of the purchase money which he contracted to pay. There is no danger to Pierce, and nobody has ever assailed his title, and nobody can do so now. The details of the case show this. I cannot enter into the details as to each one of the sixteen interests and show that they have all vested in Pierce, as this would be toilsome and useless, constituting no precedent for future use. It would be endless. It would be entirely inequitable, after twenty-one years of possession by the Bennetts and Pierce, without a single claim made by any of the Dalton heirs against the right of Bennett or Pierce, and after Pierce had had peaceable possession and enjoyment, to rescind the contract, and make Mrs. Bennett take the land back burdened with a heavy debt in favor of Pierce.

This disposes of the whole case so that it is hardly necessary to notice separately the exception of Pierce to the commissioner's report on the ground that he did not, as required by the decree, report the character of the estate of John Dalton vested in Maggie Bennett, and what part of such estate and the character thereof was outstanding, and in whom vested. The commissioner substantially complied with this requisition, reporting that the true title was vested in Maggie Bennett. We see no reason to reverse the decree, and it is therefore affirmd.

*Affirmed.*