# CHARLESTON.

## PARR *v.* CURRENCE.

Submitted January 21, 1903.    Decided May 2, 1903.

1.    EJECTMENT—*Co-tenancy—Title.*

In an action of ejectment in which the question of co-tenancy is involved and evidence strongly tending to establish the same, it is error to instruct the jury "that if they believe from the evidence that the defendants were in possession of the land in controversy under a claim and color of title adverse to the title claimed by the plaintiff and exercising open, notorious, visible and exclusive possession of the said land claiming title to the extent of the boundary mentioned in the deed under which they claimed title exercising such acts of ownership and control over said land as residing upon it, clearing the land, and cultivating the land for more than ten years next before the commencement of this suit that then they should find for the defendants;" ignoring the question of co-tenancy and the bringing of knowledge of such adverse holding home to the plaintiff.   (p. 527).

2.    EJECTMENT—*Co-tenant—Declaration.*

Under section 9, chapter 90, Code, in an action of ejectement against a co-tenant having an equitable interest in the land in controversy, the legal title to the whole of the land being vested in the plaintiff, it is not necessary or proper that the declaration mention the equity in the defendant, that being a matter of defense.   (p. 530).

Error to Circuit Court, Randolph County.

Action by Genevieve B. Parr against Johnathan Currence and another. Judgment for defendants, and plaintiff brings error.

*Reversed.*

C. W. DAILEY and STRADER & STRADER, for plaintiff in error.

HARDING & HARDING and W. B. MAXWELL, for defendants in error.

McWHORTER, PRESIDENT:

This is an action of ejectment for seven hundred and ninety acres of land in Randolph County, brought in the circuit court of said county by Genevieve B. Parr against Jonathan Currence and William Currence. The tract of land sued for was granted by the Commonwealth of Virginia by patent dated the 1st day of January, 1851, to Caleb Boggess, who died intestate leaving the plaintiff his sole heir at law. On the 9th day of May, 1898, the defendants entered their plea of not guilty and an order of survey was entered. On the 15th of October, 1901, the defendants entered their disclaimer as to certain portions of the land in controversy and a jury was empaneled, and on the 17th of October returned their verdict in favor of the defendants. The plaintiff moved to set aside the verdict on the ground that the same was contrary to law and the evidence, which motion being considered by the court was, on the 25th of October, 1901, overruled and judgment entered for costs for the defendants. The plaintiff filed two bills of exceptions which were duly signed, sealed and made a part of the record, numbered respectively, 2 and 3. A writ of error was granted the plaintiff, the first error assigned being the giving to the jury of instruction No. 6, asked by the defendants and set out in plaintiff's bill of exception No. 2. In the trial of the case plaintiff put in evidence the said grant for the seven hundred and ninety acres to Caleb Boggess; proved by witnesses the death of Caleb Boggess prior to the institution of the suit and that plaintiff was his sole heir at law, and it was admitted at bar that the defendants were in possession of part of the land in controversy claimed by them. The defendants offered in evidence on their part a deed of Melvin Currence to Jonathan Currence dated the 1st day of January, 1877, and recorded on the 5th day of May, 1890, under which the defendants claim to be holding their possession, which deed was for a tract of five hundred acres, which included a large

part of the seven hundred and ninety acres in controversy. In rebuttal plaintiff offered in evidence, and which was permitted to be read to the jury, a copy of a paper purporting to be an agreement between Caleb Boggess and William H. Currence whereby it was agreed by said Currence that he and James McCall would convey to the said Boggess, without warranty title which they might have to five undivided sixth parts in value of the said tract of seven hundred and ninety acres, and that being done the said Boggess agreed to convey without warranty, his title to one undivided sixth part in value of the said tract and the parties agreed that when partition should be made between them of the said land, the said Currence was to have his said sixth part thereof, at either end he might prefer, by a line run across the said tract parallel to the end lines thereof. Said agreement was signed by the parties under seal and witnessed by J. W. Crawford and had the following endorsement thereon: "The foregoing is a copy of a paper this day produced by Melvin Currence to John S. Hoffman as an agreement between his father, William H. Currence, Caleb Boggess, which he said he had found. I recognized the body of the writing to be that of John S. Hoffman, the signature of Caleb Boggess, thereto as his writing, and the signature of J. W. Crawford as a witness thereto, as his writing, August 9th, 1871.          JAMES H. LOGAN."

Plaintiff also introduced in evidence a copy of an agreement in writing, between Melvin Currence and Caleb Boggess dated October 12, 1868, which paper recited the fact that Joseph Hart made a deed to William H. Currence and James McCall for a tract of land on the waters of Middle Fork River, and that Currence and McCall had divided the said tract by a line running lengthwise through the center of it, north 40 minutes east, into two equal parts of like form and assigned the southeastern half to Currence and the other eastern half to McCall, and reciting the fact that the part assigned to Currence lapped onto the seven hundred and ninety acres granted to Boggess, and then referred to the agreement signed by said Currence and Boggess, whereby Boggess was to convey his interest of one-fifth in value (without reference to the improvements) of the lap, and that said Currence was to make a spec-

ial warranty deed to Boggess for the residue of said land and recited, further, that the said Currence died leaving eleven heirs, the said Melvin being one of them, had purchased the interest of four of the other heirs and closed with the words "Now I agree that James H. Logan may set apart to the said heirs and their assigns such fifth part in value of the said lap of the said land so conveyed to my father, the said William Currence, and the residue of the said land to the said Boggess.

Witness the following signature this 12th day of October in the year 1868.

                        MELVIN CURRENCE."

The agreement was witnessed by John A. Hutton. Oral evidence was introduced to prove the making and execution of said agreements.

The instruction No. 6 given by the court to the jury on behalf of the defendant is as follows: "The court instructs the jury that if they believe from the evidence that the defendants were in the possession of the land in controversy under a claim and color of title adverse to the title claimed by the plaintiff and exercising open, notorious, visible and exclusive possession of the said land claiming title to the extent of the boundary mentioned in the deed under which they claimed title exercising such acts of ownership and control over said land as residing upon it, clearing the land, and cultivating the land for more than ten years next before the commencement of this suit that then they should find for the defendants." If the evidence was sufficient to satisfy the jury of the execution of the agreements offered in evidence by the plaintiff, then the plaintiff and defendants were co-tenants of the property in controversy and the possession of one was the possession of all, or the possession was held for the benefit of all the co-tenants. In *Justice* v. *Lawson,* 46 W. Va. 163, syl. pt. 2, it is held: "A tenant in common, out of possession has a right to rely upon the possession of his co-tenant, as one held according to the title and for the benefit of all interested, until some action is taken by the other evidencing an intention to assert adverse and hostile claim." And point three of same syllabus, "One tenant in common may oust his co-tenant, and hold in severalty, but a silent possession, unaccompanied with any action amounting to an ouster, or giving notice to the co-tenant that his pos-

session is adverse, cannot be construed into an adverse possession," and in *Boggess* v. *Meredith,* 16 W. Va. 1, syl. pt. 1, it is held: "An actual ouster of one tenant in common cannot be presumed, except where the possession has become tortious and wrongful by the disloyal acts of the co-tenant, which must be open, continued and notorious, so as to preclude all doubt of the character of his holding or the want of knowledge thereof by his co-tenant. This conduct must amount to a clear, positive and continued disclaimer and disavowal of his co-tenant's title, and an assertion of an adverse right; and a knowledge of this must be brought home to his co-tenant." The declaration in this case was served on the 5th day of March, 1898, while the deed from Melvin Currence and wife to defendant Jonathan Currence bears date the first day of January, 1877, and was acknowledged on the 10th day of the same month, it was not recorded until the 5th day of May, 1890, less than eight years prior to the institution of this action. Prior to such recordation defendant's possession was presumed to be for the benefit of co-tenants if the co-tenancy was by the evidence established. In *Boggess* v. *Meredith,* cited, at page 25, JUDGE GREEN, in speaking of the possession of a tenant in common says "He occupies such fiduciary relation to his co-tenant that it is well settled that the law will never presume, that he has actually ousted his co-tenant or that there has been a conveyance to him by such co-tenant, unless he disclaims the title which he holds with his co-tenant, asserts an adverse title, and brings home to his co-tenant distinct knowledge of such adverse title and disclaimer." *Hudson* v. *Putney,* 14 W. Va. 561, and in *Parker* v. *Brast,* 45 W. Va. 399, (syl. pt. 4): "As the possession of one co-tenant is the possession of all, *laches,* acquiescence or lapse of time cannot bar the right of entry of a co-tenant until the actual *disseisin* has been effected by some notorious act of ouster brought home to his knowledge." *Talbott* v. *Woodford,* 48 W. Va. 449; *Bennett* v. *Pierce,* 50 W. Va. 604, 609. If Boggess and Currence entered into the contracts or agreements that were put in evidence by plaintiff, and whether they had or not executed such agreements, was a question purely for the jury, then they were co-tenants and possession held by one or the other of them or their privies was the possession of all the co-tenants and could not become adverse

without notice to the other of the repudiation of such holding and of an adverse claim. Instruction No. 6 given for the defendants, totally ignores the plaintiff's theory of co-tenancy and upon which there was evidence tending to establish such co-tenancy, as to the weight of such evidence as given, no opinion will be expressed as the case must go back to be again tried by a jury. The exercise of the acts of ownership and control over said land as set out in the instruction such "as residing upon it, clearing the land and cultivating the land by the defendants," are not inconsistent with their possession as cotenants, and are such as any tenant in common might have exercised for himself and on behalf of the other owners. Under *Boggess* v. *Meredith,* and other authorities cited the said instruction should not have been given as presented. Plaintiff's bill of exceptions No. 3 sets out the instruction, asked for by the plaintiff and refused by the court, as follows: "The court further instructs the jury that if they believe from the evidence that William H. Currence, father of the defendant Jonathan Currence, and Caleb Boggess executed an agreement in writing bearing date the 31st day of May, 1855, and that the paper purporting to be a copy thereof introduced in evidence is a copy of said agreement, then from the time of the execution of said contract the said Caleb Boggess was the owner of all the land in the declaration described except one undivided sixth of that portion of the land described in said agreement by metes and bounds until the time of his death; and that at his death the plaintiff became the owner thereof; and if they further believe from the evidence that Melvin Currence, son of said William H. Currence claiming to have acquired the interest formerly held by his father in said land except the share of his brother Jonathan executed the deed to the defendant Jonathan Currence bearing date the 1st day of January, 1877, a copy of which was introduced in evidence, and if they further believe from the evidence that the defendant Wm. H. Currence, went into possession of part of the land in controversy in 1877 after the execution of said deed to the defendant Jonathan Currence, under the verbal agreement with his father, the said Jonathan Currence, and has remained in such possession ever since, such possession under the evidence and circumstances in this case was not adverse to said Boggess or the plaintiff before the

recordation of said deed, on the 5th day of May, 1890, unless it is shown by the evidence that before the recordation of the said deed and ten years before the institution of this suit notice was brought home to the plaintiff or her father Caleb Boggess that the defendants were holding adversely and claiming all the land in controversy and the plaintiff is entitled to recover from the defendants the land in controversy except the one undivided sixth interest in that portion of the seven hundred and ninety acres, described in the paper offered in evidence as a copy of an agreement between Caleb Boggess and William H. Currence as to which undivided sixth, the plaintiff has waived her right to recover." There was evidence sufficiently tending to prove the tenancy in common to submit the facts on which it depended, to have authorized the giving of the instruction asked by the plaintiff and the same should have been given.

It is insisted by counsel for defendants in error that under section 9, chapter 90, Code, to entitle her to put in evidence the agreements offered by her, the plaintiff should have stated in her declaration that she was claiming an undivided share or interest in the land in controversy, stating what she so claimed. The action was brought for the whole tract, plaintiff holding the legal title thereto and she had established her legal title to the seven hundred and ninety acres. The agreements offered in evidence conveyed no title but were merely executory contracts. Under the common law such contracts were no defence in an action of ejectment. The agreements were proper to be introduced by the plaintiff for the purpose of refuting the evidence of defendant on the question of adversary possession and establishig the co-tenancy. The statute, sectoins 20, 21 and 22, chapter 90, Code, provides for equitable defences preserving the equitable rights of the defendants whether they shall set up such defence in the action or not, and the defendants in case at bar not having availed themselves of such defence, the plaintiff, by her waiver in writing to her right to recover more than five undivided sixth parts of the property sued for, secured to the defendants their one undivided sixth part without resort to equitable proceedings to recover the same in case plaintiff should recover in her action the whole land in controversy. In *Talbott* v. *Woodford, supra,* 48 W. Va. 449,

(syl. pt. 1), it is held: "Acts of exclusive ownership by one of two co-tenants, such as the open sale, conveyance and delivery of possession thereunder of the whole subject matter, amount to a complete ouster of the other co-tenant, and unless he brings suit within ten years thereafter his right of recovery will be bound by the statute of limitations." See also *Bennett v. Pierce,* 50 W. Va. 604. In case at bar the possession was not changed, the deed of January 1, 1877, was made to the party already in possession and there was nothing to call the transaction to the attention of plaintiff or her ancestor at least until the fifth of May, 1890, the date of the recordation of the deed.

It follows from what has been said that the third assignment of error, in overruling plaintiff's motion to set aside the verdict of the jury, and award her a new trial, and in rendering judgment against her in favor of the defendants, is well taken. The judgment complained of must be reversed, the verdict set aside and the case remanded to the circuit court of Randolph County for a new trial to be had therein.

*Reversed.*

BRANNON, JUDGE, (*concurring*):

Counsel for Currence puts the proposition that the plaintiff cannot recover a part interest because the declaration claims the entirety. The declaration is right. If the plaintiff had legal title to only five-sixths, then it would be proper to claim that only; but she had legal title to the whole. True, that legal title is subject to an equitable title from the compromise contracts, but that would not prevent recovery at common law, but by statute would, if the defendant chooses to use it, prevent total recover. I incline to think that, if the plaintiff had not disclaimed one-sixth, she could have recovered all. Currence could have pleaded his equity to one-sixth, and thus averted recovery of the sixth. He did not do so, and the plaintiff could recover all, and Currence's right would not be affected, because saved by section 22, chapter 90, Code 1899. Currence did not defend on that; but, if he had done so, his right would be left him. The plaintiff brought in papers showing Currence's right to the sixth. Whether these papers would have rendered a recovery of the whole error, as Currence did not rely on them, we need not say, in view of the plaintiff's disclaimer. I mean

to. say, as the purpose of this note, that recovery is not prevented by reasons of the declarations going for the whole upon the legal title. The argument of surprise will not do in face of a verdict for the defense. I agree with McWHORTER, PRESIDENT, as .to the instructions.