# CHARLESTON.

## DUFFY *v.* CURRENCE.

Submitted March 25, 1908.   Decided November 16, 1909.

1. HUSBAND AND WIFE—*Married Women—Rights—Power of Attorney.*

   A power of attorney made by a married woman empowering the attorney in fact to sell and convey her land, made 8th April 1890, is void and confers no power on the attorney, and a deed of conveyance under such power, is void and confers no title. (p. 256).

2. ACKNOWLEDGMENT—*Form—Recitals.*

   The omission from a certificate of acknowledgment of a deed of the words, after the name of a grantor, "whose name is signed to the writing above". makes the acknowledgment bad, there being no other words in the certificate to the same effect. (p. 257).

3. ADVERSE POSSESSION—*Void Deed—Occupancy.*

   If a woman married and owning land in co-parcenary before 1st April, 1869, in which her husband has a life estate, make a power of attorney dated 8th April, 1890, empowering an attorney in fact to sell and convey her interest, the power being void, and the attorney in fact makes a deed for her interest under that power, the deed thus being void, and the grantee enters into possession, his possession is not adverse to the husband, or one claiming under him without disclaimer of his right, with notice or knowledge of such disclaimer, or their equivalent, so as to constitute an ouster in law. (p. 261).

4. HUSBAND AND WIFE—*Wife's Separate Property—Conveyance—Recovery—Limitation.*

   If a woman married and owning land before 1st April, 1869,

convey it by deed to which her husband is not a party, and her grantee goes into possession, and later she and her husband convey to another by a deed good as to the husband, but void as to the wife, no action accrues to her to recover the land from her grantee in her sole deed until her husband's death, and limitation does not run against her until her husband's life estate ceases by his death. (p. 262).

Appeal from Circuit Court, Webster County.

Action by James B. Duffy and others against Eliza Currence and others. Judgment for defendants, and plaintiffs appeal.

*Reversed and Remanded.*

*Hall Bros.* and *A. W. Corley,* for appellants.

*Morton & Wooddell, W. S. Wysong, Mollohan, McClintic & Mathews,* and *W. G. Bennett,* for appellees.

BRANNON, JUDGE:

Solomon Peck died owning a lot of land of one-fourth acre in Addison, now Webster Springs, Webster county. It is said that Duncan McLaughlin conveyed it to him by deed 30th October, 1860; but that deed is not forthcoming, not on record, and there is no proof of Peck's ownership. Still, for the purposes of this case, under the pleadings, we will say that Peck did own it. He died leaving his mother, Anna Peck, and two sisters as his heirs. One of the sisters was Eliza Currence, another ———— Beverage. By deed dated 10th December, 1877, Anna Peck conveyed to P. F. Duffy her third interest in said lot. Under date of 8th April, 1890, Eliza Currence, wife of Abraham Currence, executed a power of attorned giving A. C. Minear power to sell and convey her interest in the lot. This power of attorney authorizes the conveyance of her interest. The husband is not named in the body of the power, but he signed and acknowledged it. Under this power of attorney Minear, by deed 28th August, 1890, conveyed Eliza Currence's interest in the lot to R. H. Townsend. Eliza Currence's husband is not in any wise a party to this deed, and it is the deed only of Eliza Currence made by her attorney in fact, Minear. By deed dated 16th April, 1880, P. F. Duffy conveyed to Elizabeth Curry a tract of land in and adjoining the town of Addison, and includ-

ing lot No. 1 in North Main Street, giving the tract of land specific metes and bounds and stating the quantity as seventeen and one-half acres. In June, 1892, P. F. Duffy brought a suit against Eliza Currence, R. H. Townsend and the unknown heirs of Solomon Peck, setting up his claim to a share of the lot derived under his deed from Anna Peck as the mother of Solomon Peck, and stating that Eliza Currence, a married woman, had attempted to convey her interest in the lot to Townsend, and prayed that the lot be sold and distributed among the persons entitled. By deed dated 22nd March, 1882, Elizabeth Curry and her husband conveyed the said seventeen and one-half acres to said Townsend, being the same which Duffy had conveyed to Elizabeth Curry as above stated. Townsend answered Duffy's bill alleging that Duffy had no right to partition, as he had passed his interest in said lot acquired from Anna Peck to Elizabeth Curry in his deed to her above mentioned. This suit slept inactive for a long time in the court. On 8th November, 1902, C. P. Dorr filed in Duffy's suit a pleading called a petition, asking that it be read as an answer. Process issued on it 6th January, 1903. This petition seems to have been treated as a cross-bill. It prayed that Dorr be made a party to Duffy's suit. It named as defendants P. F. Duffy, R. H. Townsend, W. G. Bennett, Louis Bennett, Sampson Hamrick, Benjamin Hamrick and Eliza Currence. It recognized Duffy's right to a share in the lot under the deed from Anna Peck to Duffy, and says that a part of the third of the lot owned by Duffy had passed to Elizabeth Curry by inclusion in the boundary in the deed from Duffy to Elizabeth Curry, and that the seventeen and one-half acres conveyed by Duffy to Elizabeth Curry and by her to Townsend had come to be owned under a judicial sale by W. G. Bennett and Louis Bennett. That said seventeen and one-half acres had been sold from Townsend by a decree and purchased by Bennetts. Dorr's petition averred that a portion of Duffy's third had been included in Duffy's deed to Elizabeth Curry. Dorr's petition states that ————— Beverage, sister of Solomon Peck, died leaving as her only children and heirs at law Jacob Beverage, Susan Rogers, Uriah Beverage, Mary J. Doyle and Levina A. Miller. Dorr's petition filed deeds from them under which he claimed the Beverage third of said lot. Dorr also filed a deed from Eliza Currence and her husband, dated 24th

September, 1902, conveying to Dorr all their right, title and interest in the said lot. Dorr's petition thus claimed two-thirds of the said lot. Dorr's petition states that by deed dated 15th March, 1895, Townsend pretended to convey a one-third interest to Benjamin Hamrick, but alleges that the deed was void because the power of attorney from Eliza Currence to Minear and the deed from Minear to Townsend were not joined in by the husband of Eliza Currence. He prayed that the lot be partitioned between him and P. F. Duffy and the Bennetts, giving the Bennetts the portion within certain lines; and he prayed that the power of attorney from Eliza Currence to Minear, and the deed from Minear as attorney for Eliza Currence to Townsend, the deed from Townsend to Sampson Hamrick below mentioned, and the deed from Sampson Hamrick to Benjamin Hamrick (there was none) be set aside and treated as of no effect. After Minear had conveyed· Eliza Currence's third to Townsend, Townsend by deed dated 4th August, 1892, conveyed to Sampson B. Hamrick a particular piece of the said Solomon Peck lot, giving it particular metes and bounds; and by deed 15th March, 1895, Sampson B. Hamrick conveyed this piece to Townsend, and by deed of the same date Townsend conveyed this piece to Benjamin Hamrick. Benjamin Hamrick filed an answer not denying that Dorr had acquired the Beverage third of the said lot, but denying all right in Dorr to claim the Eliza Currence third of the said lot, and insisting that his own right to that third was good under the said power to Minear and Minear's deed to Townsend, and denying Dorr's right to the Eliza Currence share of the lot. Thus there arose a contest between Hamrick and Dorr as to the better right to the third of Eliza Currence. The Bennetts filed an answer in which they deny any ownership in Solomon Peck. They deny that Dorr had any right or had proven any right to any interest in the lot. They deny that the seventeen and one-half acre tract took in any part of the Peck lot. They set up that Elizabeth Curry and after her Townsend and after him they, the Bennetts, had actual possession of the seventeen and one-half acres, so that neither Duffy nor Dorr could claim anything inside that tract. They rely upon the statute of limitations. So the answer of Benjamin Hamrick set up that Townsend was in actual possession of said lot, claiming

two-thirds of it to the exclusion of the unknown heirs of Solomon Peck. He meant by the two-thirds the one-third which Townsend claimed Duffy had sold to Elizabeth Curry, and. the other third that of Eliza Currence conveyed to him by Minear. Hamrick's answer averred that Townsend, and after him S. B. Hamrick, and after him, he, Benjamin Hamrick, had been in the open, notorious and exclusive possession of the third which he claimed since the 28th day of August, 1890, the date of the said deed from Minear to Townsend, alleging that at that date Townsend had taken possession of that third using it exclusively, taking rents and profits, making improvements and otherwise exercising over it such acts of ownership as manifested an unequivocal intention to repudiate any claim of Eliza Currence. Hamrick's answer, in short, pleaded actual, adverse possession of the Eliza Currence interest, represented by said piece, from the 28th August, 1890, down to the filing of Dorr's petition. P. F. Duffy died pending the suit, and the suit was revised in the names of his heirs. The case was heard upon Duffy's bill and Townsend's answer and Dorr's petition or cross-bill, answers of the Bennetts and Hamrick, and the decree dismissed Duffy's bill and Dorr's petition or cross-bill, and the Duffy heirs and Dorr appeal.

### ELIZA CURRENCE SHARE.

The bone of contention in this case is in the question, Who owns the Eliza Currence third? Does Dorr own it, or does Hamrick own it? Each asks a partition which shall assign him that third. Does Benjamin Hamrick own it by paper title? He does not. His paper right rests on a power of attorney made by Eliza Currence, a married woman, 8th April, 1890, empowering Minear to sell and convey her third. At the date of that power a married woman could not make a power to enable her agent to convey her land. She had not the power of a single woman, and could convey only by her will or deed by her own hand acknowledged as prescribed by Code, chapter 73. *Shanks* v. *Lancaster,* 5 Grat. 111, 118; *In re Anderson,* 23 Fed. R. 485, 488. Thence it follows that the deed from Minear as attorney in fact, conveyed nothing to Townsend. Likely the first act authorizing a married woman to execute such power

was Code 1868, chapter 73, section 12, re-enacted by chapter 67, Acts 1875, repealed by re-enactment of Code, chapter 73, omitting section 12 containing this power, by chapter 149, Acts 1882, passed 27th March, 1882, taking effect ninety days after that date. This power in a married woman to make a power of attorney was restored by Act of 21st February, 1895, Acts 1895, chapter 9. I do not see that there is any question of burden of proof between Dorr and Hamrick. It is a question of. title. Which has right to participate in the partition? Clearly by Code, chapter 79, section 1, the court must try "all questions of law affecting the legal title"; must decide which of those contestants has title to the Eliza Currence third.

Has Dorr paper title to the Eliza Currence third? He presents an original deed from Abraham Currence and his wife, Eliza Currence, to him) for this third. Is it valid as to the wife? It is claimed that because the certificate of acknowledgment omits the words, "whose names are signed to the writing above", the deed is bad. First, we must note that Eliza Currence having married Abraham Currence before 1st April, 1869, and Solomon Peck having died before that date, Abraham Currence has a life estate, and that life estate was passed to Dorr by the deed of Currence and wife to Dorr, without acknowledgment. ' So, Dorr would have right to participate in the partition and hold this Currence third until Abraham Currence's death. A life tenant may have partition. The decree is erroneous in denying Dorr this life tenant right. But has Dorr the remainder in fee of Eliza Currence after her husband's death? The statute, Code, chapter 73, section 4, prescribes in the form those words. Are they, or their equivalent indispensable? This is a matter of substance, not mere form. This certificate does not identify the Eliza Currence as the *same* Eliza Currence who signed the deed. If this is not so, then it is not Eliza Currence's deed, since a married woman's deed without acknowledgment is of no force. The statute prescribes a form having those words, and those words are the only ones that identify the person. The statute intends that the officer shall certify that the woman acknowledging is the same who signed the deed. It intends that the officer from his own knowledge of the person, or

by prudent inquiry, shall ascertain and find and certify that identity of person.    Otherwise false certificates may be obtained. The true person could not deny the acknowledgment.    This clause is of vital importance.    It performs the material office of identifying the person acknowledging with the person signing.    Those words answering this important purpose, a court cannot dispense with them.    For many years our statute law has contained them.    An officer should not so certify unless he knows or ascertains such identity.    Most of the states by statutes make this matter essential.    In 41 Am. Dec. 175, it is stated that these statutes almost universally require the officer to certify that the party making the acknowledgment was personally known or proved to him by a credible witness, satisfactory evidence or the like, to be the same person who executed the deed, and substantial compliance with this requirement is indispensable to the validity of the acknowledgment.    Vol. 1 Am. & Eng. Ency. L. 543, says:    "It is essential that the identity of the one making acknowledgment should appear in the certificate."    We recognize that substantial compliance with the statute form is all that is required; indeed the Code says that the certificate shall be "to the following *effect*", then giving the form.    Now, the certificate, whatever its form or words, must have the same *legal effect* as the form gives.    Brewster on Conveyances, section 268, says that whilst substantial compliance is sufficient, yet there are certain essentials to be met by the certificate, one being "the identity of the party making the acknowledgment with the party executing the instrument."    Devlin on Deeds, section 558, says: "The general rule, of course, prevails in reference to the certificates of married women, that it should appear that she was known to the officer taking the acknowledgment."    He quotes from the Supreme Court of Illinois.    "A deed cannot be said to be acknowledged until it appears that it was the grantor himself, not some other person, who may have personated him, who was before the officer. This provision is wise and salutary in its operation.    If no such requirement existed, forgeries might be easily perpetrated, and it would be hard in all cases, impossible in many, to prove the fact.    Remove this safeguard, and titles to real estate would

be held by a slender and brittle tenure". *Fryer* v. *Rockefeller,* 63 N. Y. 268 (108 Amer. St. R. 555). Counsel for Dorr insist that the name of Eliza Currence being the same in deed and certificate, we must presume identity, and cite numerous cases for the proposition, among them *Barrett* v. *Tavener,* 21 W. Va. 656, holding that where the trustee's name in a deed of trust is the same as the officer taking the acknowledgment the presumption is that the person is one and the same. As a general proposition this is conceded. That is a mere presumption; but in this case we cannot go on mere presumption. It is not a question of presumption, not a fact to be proved by mere presumption, because the statute demands the certificate of the officer as to the sameness of person. That is the evidence which the statute prescribes. To sustain this certificate we are cited to *Wise* v. *Postlewait,* 3 W. Va. 452. The deeds involved in that case, the court said, were tested by the Act of 1792. They were acknowledged before a county court. The act prescribed no form of certificate, but simply required the court to declare the fact of acknowledgment. 108 Amer. St. R. 532. The act prescribed no form for that declaration. The court simply declared the fact that the deed had been proven or acknowledged, and its record only stated the fact, and then it had the verity attributed by law to the action and record of a court of general jurisdiction, which such court then had. In that case the court certified the fact that a certain deed was presented to it, "acknowledged and ordered to be recorded". That certified a fact which the law submitted to the examination and determination of a court, and it heard the evidence and certified the fact of acknowledgment. It did not say that the grantors acknowledged it, but it certified the fact that it had been acknowledged, and it was to be presumed that the court made the proper inquiry as to identity and other things proper. Its record was finality. But in our case we have no court. But we have an officer for whose act there is a prescribed certificate, containing certain elements. A different case from *Wise* v. *Postlewait.* We are cited also to the case of *Adams* v. *Medsker,* 25 W. Va. 127. In the first place the certificate in that case distinctly states that "the within named William Lyons" and others named acknowledged the deed. That language identified the parties by saying that they were the same ones

named in the deed. That is sufficient to deprive that case of
any force in this case. But I will add that no question of iden-
tity was involved or discussed in that case. The court consid-
ered the question whether the acknowledgment was in Fayette
county, Pennsylvania, whether it showed the state, as the state
was not mentioned, and further questioned whether it identified
the deed sufficiently by the words "the within indenture". In
short, there was no point of identity of the executors or acknowl-
edgers involved or discussed. We have striven to uphold this
certificate, but cannot do so consistently with law. Thus, Dorr
has no paper title to the Eliza Currence third, except an estate
for the life of her husband.

It is argued that Hamrick did not rely upon this defect in
the lower court in pleading, and cannot do so in this Court. We
are cited to cases such as *Shenandoah R. Co.* v. *Dunlap*, 84 Va.
349, *Mundy* v. *Vawter*, 3 Grat. 518, and others, saying that a
court can only decree upon matter in the pleadings. Granted;
but this matter is in the pleadings. Dorr's petition alleges that
Currence and wife conveyed to him by this deed, and alleges
ownership under it. Hamrick's answer denied such ownership
and conveyance. This raised the question of Dorr's title, and
called on him to prove it and he does so by this deed, which
fails because of invalidity.

### ADVERSE POSSESSION.

Can Hamrick hold under the statute of limitations? Assum-
ing what is by no means clear, that the acts of Townsend were
such as to constitute adverse possession, and continued for the
statutory period, can they operate as adverse possession? He
says that he occupied the lot "openly, notoriously, visibly and
uninterrupted". That is only his opinion. He must give facts.
He does say that he let Conrad erect a small building for a pic-
ture gallery and lemonade stand, and had street lamps and some
lumber piled on it. No proof of continuance. No proof dur-
ing S. B. Hamrick's ownership. In fact, Hamrick's evidence
goes to show that the little lemonade stand had disappeared
when he got his deed, as he says there was some lumber piled
on the lot, thus not speaking of the little building, although
asked who was in possession at the date of his deed. The lot

was never fenced. The lamps and building are not proven to have continued. I say assuming these acts were in character sufficient and continuous, were they adverse in law? Abraham Currence owned a life estate. Was Townsend's possession adverse to him? Townsend entered under color of his void deed from Minear as attorney in fact for Eliza Currence. This was for an undivided third. Everybody will say that this was not ·adverse to Duffy and Beverage, there being no notice to them of adverse claim. Townsend was co-tenant with them, as ·Mrs. Currence had been. Abraham Currence owned a life estate. He was co-tenant with Duffy, Beverage and Townsend. Townsend was co-tenant with Abraham Currence. The possession of one is possession of the other in the absence of actual ouster, and there can be no ouster in such case without notice to the co-tenant of adverse claim or knowledge of it, of which there is no evidence in this case. *Russell* v. *Tenant,* 63 W. Va. 623, holds that if a tenant in common be in possession and a stranger enter into possession with him, the co-tenant out of possession is not disseized, and the joint occupancy of the tenant in possession and the stranger is not adverse to the tenant out of possession. So Townsend's possession was not adverse to Abraham Currence. He could only give it that character against Currence's life estate by repudiating the right of Currence and bringing home to him notice or knowledge, or its equivalent, of such hostile claim. These principles will be found in the opinion by Judge POFFENBARGER in *Russell* v. *Tennant,* just cited. We have considered whether the fact that Eliza Currence, by her attorney, made a deed for her whole estate of an undivided third, would be notice to her husband of Townsend's claim of ownership. Abraham Currence was no party to it. It was no notice to him. We have also considered whether the fact that he signed the power of attorney is notice of Townsend's claim under the deed to him under that power. He might suppose a conveyance might be made under it; but there is no evidence that he actually knew of the conveyance to Townsend and his possession. So, we hold that Dorr's right to Abraham Currence's life estate is not barred. Benjamin Hamrick's occupancy under a deed by metes and bounds of a particular part cannot be considered adverse to Abraham Currence under principles above stated as to notice of adverse claim, and be-

sides is less than ten years before Dorr filed his petition. Besides, his petition admits himself a co-tenant with Duffy and Beverage.

### ADVERSE POSSESSION AS TO ELIZA CURRENCE.

Is it necessary to say that the statute could not effect her until after the death of her husband? He having a life estate for his own life her right of entry did not accrue until his death, and she could not sue till then, and hence the statute can give Hamrick no right as to her. *Arnold* v. *Bunnel*, 42 W. Va. 473; *Merritt* v. *Highes*, 36 *Id.* 356; *Laidley* v. *Land* Co., 30 *Id.* 505. We conclude that the remainder in fee after the death of her husband remains yet in Eliza Currence in her third, because the deeds to Townsend and to Dorr are inefficient to pass her right.

It may be that a reason actuating the circuit court in dismissing Duffy's suit and Dorr's petition was that the lot was forfeited for omission from the tax books. Whether so or not we do not say. The theory for this contention is, as I suppose, that forfeiture takes away title and that those who ask partition must have title, and if they have parted with it they cannot get partition. But the question really does not arise for the simple reason that nobody raises the question of forfeiture but the Bennetts, and they claim no share in the lot or right to participate in its partition, and cannot raise this question.

Hamrick would impeach Dorr's purchase of the Currence share on the ground that when Hamrick was thinking of purchasing that share Hamrick asked the advice of Dorr as an attorney at law as to the safety of purchasing said share and building a house on the lot. Hamrick's testimony as to this is that Dorr replied that any improvement that Hamrick should put on the lot could not be taken without paying for it, and that the lot was undivided and when divided if Hamrick should get the most valuable part he would have to pay the others to make the others up equal and that it was a safe purchase. Another witness states that Dorr told Hamrick to go ahead and buy the lot and build, and that S. B. Hamrick owned the lot. Upon this evidence Hamrick's counsel contends that the relation of client and attorney existed between Dorr and Hamrick, and that

Dorr's after purchase of this Currence share was a violation of
the trustful relation between client and attorney, and that Dorr's
purchase in equity is for the benefit of Hamrick and that Dorr
cannot claim against Hamrick.   First we must inquire whether
that relation existed.   It must exist to apply the principle for
which Hamrick's counsel contends.   *Keenan* v. *Scott*, 64 W. Va.
137; *Lewis* v. *Broun*, 36 *Id.* 1.   Let us ask, Where is any such
legal relation existing between Hamrick and Dorr?   Legal rela-
tion for what?   Obligation on Dorr to do what?   In a mere
moral point of view if he answered at all the question of Ham-
rick, it would be simply to answer truly his best opinion.   Ham-
rick did not employ Dorr to examine the title; did not ask his
opinion about the validity of the power of attorney or the deed
under it; did not engage Dorr to acquire the share for Ham-
rick; did not employ Dorr in any litigation, for there was none,
existing or contemplated; did not pay Dorr a cent; did not ask
Dorr to take one single step in the proposed purchase, nor did
Dorr in any wise participate in Hamrick's purchase.   As there
was no relation of client and attorney, this forecloses the prop-
osition.   All that occurred between Dorr and Hamrick was what
occurs every day between attorneys and other people, that is,
that a neighbor asks a lawyer casually some question and the
lawyer answers, generally haphazard and without pay.   Nobody
looks upon this as creating any relation of client and attorney.
If Hamrick had employed Dorr to examine those papers and to
procure the title, and act for him in the matter of the purchase,
it might be different; but that is not the case.   It does not ap-
pear that Dorr then knew anything of the character of that
power of attorney or the deed under it.   It seems from Ham-
rick's own statement that Dorr, assuming that Mrs. Currence
owned a share in a lot, only expressed the opinion that if Ham-
rick should purchase and build he would be compensated for
the building when a partition should be made, and that if he got
the more valuable part of the lot, he would have to make other
parties equal.   There was no misstatement in this.   I mean that
Dorr never passed on those papers.   He expressed an opinion
upon a different matter than the security of title.   Likely at
that time he knew nothing of the defective papers.   Is he to
be held to guarantee them?   We cannot see anything in this
point made for Hamrick.   It is proper to say that Dorr under

oath denied that he gave any such advice. He said: "I say it is false and untrue."

AS TO THE ANNA PECK AND BEVERAGE INTEREST.

The court below dismissed Duffy's bill and Dorr's petition without relief by partition as to these interests. Duffy and Dorr unquestionably owned them. Duffy may have deprived himself of a small portion of his interest in the lot in his deed to Elizabeth Curry, if so, his interest would abate to that extent. Nobody claims the Anna Peck and Beverage interest aganist Duffy and Dorr. They are entitled to have those interests allotted to them in fee.

AS TO THE BENNETTS.

They claim nothing outside the land, seventeen and one-half acres, including lot No. 1, (not the lot in controversy) conveyed to Elizabeth Curry, 16th April, 1880, by P. F. Duffy. Their land has since that deed been in actual, exclusive, adverse possession, and they cannot be affected as to any of their land within the bounds of that deed, whether a part of the Peck lot is in it or not. I need not detail evidence as to this possession. The Bennetts claim no part of the Peck lot, unless some of it is in Duffy's deed to Elizabeth Curry, which Bennetts deny. Duffy's bill made Townsend, under whom Bennetts claim, a defendant, not bceause of his claim under Elizabeth Curry to the seventeen and one-half acres, but as a co-tenant of the Peck lot because of Townsend's claim to the Currence third of it. If even any of the Peck lot be within the bounds of the seventeen and one-half acres, but it is not, the Bennetts could hold it by adverse possession. That is one reason why they must be dismissed from this suit. Another reason is, that it is not proven that any of the Peck lot is in the bounds of the deed from Duffy to Elizabeth Curry. The Bennetts deny that it is. True, Townsend's answer to Duffy's bill says that it is within those bounds, and generally an admission of a predecessor in title is admissible against a privy as his successor in title; but at the date of that answer that matter was not in issue. Duffy's bill did not claim such to be the fact. And certainly that admission is not conclusive. Another reason why the Bennetts must be dismissed

is, that no one claims any relief against them as to the land owned and claimed by them. In fact there is no controversy as to anything the Bennetts claim, and I need not have said what I have as to them, except that they are in the suit. As Bennetts deny that any of the Peck lot is in their bounds, and they claim no interest in the partition, and the only contest is between Dorr and Hamrick as to the Currence share, I do not see that Bennetts can call for proof as to Solomon Peck's ownership of the lot, or call on Dorr to prove it. All other parties, Duffy, Dorr, Hamrick and Townsend, the only real litigants, assert his ownership. All claim under the same source in comman, Soloman Peck.

Our decree will be to reverse the decree of the circuit court with costs to Dorr and Duffey's against Benjamin Hamrick in this Court. And to dismiss Dorr's petition as to W. G. Bennett and Louis Bennett with costs to them in the circuit court, as Dorr's petition alleged that a part of the Peck lot was in their tract, and made them parties and compelled them to answer. And we remand the case to the circuit court for further proceedings according to the principles stated in this opinion.

BRANNON, JUDGE:

Benjamin Hamrick's children file a petition for re-hearing, claiming that the interest of Eliza Currence was forfeited for non-entry for taxes, and that Hamrick having paid taxes under assessment in his name gets the benefit of forfeiture. In the first place Hamrick does not directly allege any forfeiture; but in his answer says that if there is such forfeiture as Bennetts allege, he claims its benefit under section 3, article 13 of the Constitution. It is quite doubtful whether this is adequate allegation of forfeiture. But waive that. The reply is that no forfeiture is established. Evidence not sufficient. Brief of counsel for Hamrick states that for the years 1891 to 1904, both inclusive, tax charges were made on the lot by fractions to the names of Townsend, the two Hamricks, Dorr and Duffey, covering and paying taxes for whole, and asserting that Currence and wife were not charged for those years. How do we know they were not? But suppose they were not, payment by Townsend and Hamricks was made on title derived from Currences, not under a

66 W. Va.

different adverse title, but in privity, and this payment prevented forfeiture in Currence name. The State got taxes on same land under same title. The very payment by Hamricks relied upon to transfer forfeiture to him defeats that claim by defeating forfeiture. See *State* v. *Garnett*, 66 W. Va.— (66 S. E. 98) ; citing *State* v. *Allen*, 65 W. Va. 335. *State* v. *Lumber Co.*, 64 W. Va. on pp. 676-7, where cases are collected.                    *Reversed and Remanded.*