# CHARLESTON.

LAING *et al v.* GAULEY COAL LAND Co. *et al.*

(No. 6642)

Submitted May 13, 1930.   Decided May 31, 1930.

*S. M. Austin, Carl C. Sanders,* and *Poffenbarger & Poffenbarger,* for appellants.

*Brown, Jackson & Knight, John C. Morrison, Jr.,* and *Angus MacDonald,* for Gauley Coal Land Co.

*Dice & Easley,* for Meadow River Lumber Co.

MAXWELL, JUDGE:

This is a suit for partition of a tract of 2,513 acres of land in Greenbrier county of which Alexander S. Skaggs died seized in 1883. The plaintiffs claim an undivided 3/22 and the defendant, Mattie Mann, an undivided 1/22 interest. From a decree denying the claims of the plaintiffs and said defendant and dismissing the bill, the plaintiffs appeal.

Alexander S. Skaggs died intestate, survived by his widow and eleven children. The widow died about 1888. On the 18th day of April, 1888, four of the children, together with the respective spouses of those of the four who were married, executed a power of attorney to Henry A. Skaggs to sell and convey by deed of general warranty their undivided interests in and to the above-mentioned tract of land. Two of the four heirs who executed this power of attorney were married women. Laura A. McClung, the wife of Joseph A. McClung, and Adelia Livesay, the wife of G. A. Livesay. Henry A. Skaggs was also a son of said Alexander S. Skaggs, deceased.

On the 26th day of March, 1889, the said Henry A. Skaggs, in his own right, his wife joining, and as attorney in fact for his brothers and sisters named in said power of attorney, granted and conveyed the undivided interests of himself and said brothers and sisters, aggregating 5/11, to Homer A. Holt, A. C. Snyder, and Alex F. Matthews for and in consideration of the sum of $3,200 payable as recited in said deed. By deed of the 4th of April, 1890, the said last-named parties and their respective wives conveyed to the trustees of the Gauley Coal Land Association the above-mentioned 5/11 undivided interest, and certain other interests in said land which the said Holt and associates had acquired. At about the same time, the trustees of the Gauley Coal Land Association acquired the interests of all the other children of said Alexander S. Skaggs in said tract of land. On the 12th of March, 1903, the said trustees conveyed the said tract of land to the defendant, Gauley Coal Land Company, a corporation. Since 1889, the said trustees and their successors in title have dealt with said property as their own, free from adverse claim, until this suit was brought in 1926, and have paid the taxes thereon. The matter of possession will be more fully discussed.

Some one conceived the idea that because of the peculiar condition of our statutes in 1888, with reference to the right or want of right of a married woman to execute a power of attorney for the conveyance of her separate real estate, the power executed by Laura A. McClung and her husband, and Adelia A. Livesay and her husband to Henry A. Skaggs, April 18, 1888, was executed by said women without authority of law, and that consequently the deed of Henry A. Skaggs, attorney in fact, to Homer A. Holt and others under date of March 26, 1889, was wholly void in so far as it undertook to pass title to the respective interests of Mrs. McClung and Mrs. Livesay. Acting upon this theory, persuasion was exercised upon Mrs. Livesay and Henry McClung, the latter being one of the two children of Mrs. Laura A. McClung, deceased, to execute to the plaintiff, C. M. Ward, and one C. V. Cottle, deeds for the supposed undivided 3/22 interests of said grantors in and to the above-mentioned tract of which Alexander S. Skaggs died seized. By deed of April 24, 1925, the said C. V. Cottle con-

veyed his supposed interest in said land under and by virtue of the said last-mentioned deeds to the plaintiff, Margaret N. Laing, the wife of John B. Laing. The defendant, Mattie Mann, sister of Henry A. McClung, asserts title to an undivided 1/22 interest on the same score as that on which the said 3/22 interest is predicated as just recited. Thus it appears that after the lapse of more than 35 years, effort is being made to destroy this title which through that long period of time was deemed by the heirs of Alexander S. Skaggs, deceased, and everybody else who knew anything about it to be settled. It was when strangers discovered what they conceived to be a flaw in the title that the trouble started. Such, in brief, is the setting of this case.

The contention of the plaintiffs and of the defendant, Mattie Mann, is based on the holding of this court in the case of *Duffy* v. *Currence*, 66 W. Va. 252, 66 S. E. 755, wherein it was held, (syllabus point 1): "A power of attorney made by a married woman empowering the attorney in fact to sell and convey her land, made April 8, 1890, is void, and confers no power on the attorney, and a deed of conveyance under such power is void and confers no title." In the opinion, JUDGE BRANNON said: "At the date of that power a married woman could not make a power to enable her agent to convey her land. She had not the power of a single woman, and could convey only by her will or deed by her own hand acknowledged as prescribed by Code 1906, c. 73. *Shanks* v. *Lancaster*, 5 Grat. (Va.) 111, 118, 50 Am. Dec. 108; *In re Anderson* (D. C.) 23 F. 485, 488. * * * Likely the first act authorizing a married woman to execute such power was Code 1868, c. 73, § 12, reenacted by Chapter 67, p. 144, Acts 1875, repealed by reenactment of Code, c. 73, omitting section 12, containing this power, by chapter 149, p. 478, Acts 1882, passed March 27, 1882, taking effect 90 days after that date. This power in a married woman to make a power of attorney was restored by Act. Feb. 21, 1895, (Acts 1895, c. 9)."

There is much general authority that a statute which authorizes a married woman to grant and convey her separate real estate is ample authorization for her to execute a power to another to make a conveyance for her. "In some cases it has

been held that a married woman could not make a valid power of attorney, even jointly with her husband, to make a deed of her interest in real property. On the other hand, where a married woman is given unqualified power to convey her real estate as if a feme sole, her power to do so to a duly authorized agent would seem to be unquestionable and this power has been upheld by the courts, and, under such statutes, it is generally recognized that a wife may by a properly executed power of attorney appoint her husband agent to convey her lands.'' 13 Ruling Case Law, p. 1327. The principal defendant, the Gauley Coal Land Company, relies upon this line of authority to sustain its position that the rule of the case *Duffy* v. *Currence* is not sound. However, since the instant case must be decided for the defendants, except Mattie Mann, on other grounds, we shall not re-examine the said holding in *Duffy* v. *Currence,* but in conformity therewith, will treat the power of attorney of Mrs. McClung and Mrs. Livesay and their husbands as abortive, and the deed of Henry A. Skaggs to Homer A. Holt and others as void, in so far as it purported to convey the interests of the said two women.

Starting with the proposition that the said attempted conveyance of the interests of said two women was void, the plaintiffs take the position that the legal title to the undivided interests of the said two women has remained to this day in them, their heirs and assigns, and that the trustees of the Gauley Coal Land Association, and the Gauley Land Company, a corporation, the Meadow River Lumber Company, a corporation, and all other persons who have acquired interests in the said tract of land and have occupied the same have maintained such possession as cotenants of the said two women, their heirs and assigns. The very able counsel for plaintiffs say: ''Although a conveyance by one cotenant of the entire common property, to a stranger, as if such cotenant were the owner of the whole, followed by actual possession by the stranger of such character as to constitute notice thereof to the cotenants of his grantor, starts the statute of limitations or is the beginning of a possession adverse to such cotenants, the conveyance of only a part of the common property, or an in-

dividual interest therein, by such cotenant, to a stranger and entry of the stranger thereon is not an ouster of the grantor's cotenants as to the residue of the common property, nor, in the latter case, as to any of it, and do not constitute as to it, either an ouster or the beginning of adverse possession''— citing *Boggess* v. *Meredith,* 16 W. Va. 1; *Worthington* v. *Staunton,* 16 W. Va. 208, and a *Texas* case. And further, they say : ''There was no express or actual notice to the plaintiffs or those under whom they hold, of intent on the part of the defendants, to claim and hold exclusive title to the whole of the Skaggs tract, nor were the acts done thereon of such character as to constitute notice thereof, an essential element in the law of ouster between cotenants''—citing *Reed* v. *Bachman,* 61 W. Va. 452, 57 S. E. 769, 123 Am. St. Rep. 996; *Cooey* v. *Porter,* 22 W. Va. 120, and *Russell* v. *Tennant,* 63 W. Va. 623, 60 S. E. 609, 129 Am. St. Rep. 1024. In placing their reliance upon the propositions thus set forth, counsel for the plaintiff are disregarding the fact that in the instant case the possession adverse to the plaintiffs and those under whom they claim was not started by a conveyance made by cotenants of Mrs. McClung and Mrs. Livesay, nor was it started by a mere adverse holding of a cotenant of his assigns without color of title, but was started by the deed, void as to them, made by their attorney in fact, Henry A. Skaggs, in 1889, in pursuance of an attempted bona fide power of attorney which they, together with their husbands, had executed to said Skaggs the preceding year. Authority need scarcely be cited for the proposition that a void instrument may give color of title under the statute of limitations. *Bennett* v. *Pierce,* 50 W. Va. 604, 40 S. E. 395; *Jarrett* v. *Osborne,* 84 W. Va. 559, 101 S. E. 162.

No useful purpose would be accomplished by dealing at length with the voluminous testimony touching the matter of possession of this property from the year 1889. The land was in a native state in large degree, most of it being covered with timber. The trustees of the Gauley Land Association, and subsequently the Gauley Land Company, leased numerous parcels of surface to various individuals for residential, agricultural, and grazing purposes. There were also conveyances of sev-

eral hundred acres of the surface. The lessees under said leases, and the grantees under the deeds, used and occupied their several parcels of land, openly and notoriously, for many years—in several instances for more than the statutory period of ten years. This user included also the opening and operating of one or two coal banks. Large acreages of timber were sold and operated. No accounting was made to Mrs. Livesay or Mrs. McClung, or the latter's heirs, and no accounting was requested by them. The defendant, Meadow River Lumber Company, acquired from the successors in title of the trustees of the Gauley Coal Land Association more than 2,500 acres, possibly as much as 2,800 acres, of timber on the aforesaid tract of 3,513 acres of land, and from the year 1912 to the year 1915 was engaged on a large scale in the manufacture of lumber from said timber. During said period the said lumber company maintained four large camps on the said land and cut the timber from about 2,000 acres thereof. These uses of the land amounted to a total denial of Mrs. Livesay's and Mrs. McClung's rights in the property. This positive denial constitutes the affirmative of the negative proposition that the statute of limitations "does not begin to run in favor of one joint-tenant against his cotenant until actual ouster or disseizin, or some act equivalent to denial of their rights in the premises." *Fry* v. *Payne,* 82 Va. 759, 1 S. E. 197. Here there were many and repeated acts of denial of the title now asserted by plaintiffs and Mattie Mann. The proposition last quoted is similarly expressed in *Pickens* v. *Stout,* 67 W. Va. 422, 68 S. E. 354, 359, wherein the court said: "In order to effect an ouster, actual express notice of the hostile claim must be given to the cotenant, or such acts must be done upon the land as he is bound to take notice of as being hostile." In the instant case both of these requirements are met. In the first place the execution of the void power and the receipt by Mrs. Livesay and Mrs. McClung of their respective shares of the purchase money cannot be construed as anything less than actual notice to them of the adverse and hostile claim of the purchasers who paid the money. And in the second place, the many acts of open, notorious, adverse possession, particularly the cutting of

the timber, were acts of which these women were bound to take notice as being hostile to them. The timber operations constituted a large affair and of necessary notoriety in that community. If the lumber company had no legal title to the interests of Laura A. McClung and Adelia Livesay in said timber, then the lumber company, in removing said timber was committing waste as to the interests of said two women. The evidence warrants the chancellor's finding that both Mrs. McClung and Mrs. Livesay were paid their respective shares of the purchase money derived by Henry A. Skaggs from Homer A. Holt and others under the sale and conveyance made to them March 26, 1889. Both women lived within a few miles of the land. Mrs. McClung died about the year 1905. Neither Mrs. Livesay nor the heirs of Mrs. McClung made any protest against the cutting and removal of the said large acreage of timber. In fact, they never made any claim to any sort of interest in the land subsequent to the conveyance by Henry A. Skaggs to Homer A. Holt and associates in 1889, until Mrs. Livesay and Henry McClung executed in 1919 the deed hereinbefore mentioned to C. M. Ward and C. V. Cottle.

The situation is different from what it would be if a cotenant without any semblance of authority should attempt to convey away the undivided interests of his cotenants not in possession. In such case, the cotenants out of possession might assume that the possession of the property and the cutting of timber and other invasion of the corpus of the estate was for the benefit of all of the cotenants and content themselves with their right to an accounting; but not so where the complaining cotenants have themselves executed an instrument which may afford basis of color of title for adverse possession. In such situation, the complaining cotenants may not be indifferent to their own rights, nor to the possibility that the instrument which they have executed may readily become the basis of color of title. If Mrs. Livesay and the heirs of Mrs. McClung were claiming title to their alleged respective undivided interests in the said large tract of land, which in fact they were not, it was their duty to take notice of the cutting of said timber and to protect their rights therein. Their failure so

to do is wholly inconsistent with the present contention of the assignees of Mrs. Livesay and of the heirs of Mrs. McClung, and the assignees of one of them. If these people owned any interest in the said land subsequent to 1889, it was their duty to discharge the ordinary responsibility that the law imposes upon owners of property. They could not turn their backs upon the situation in the light of the attempted power of attorney and the attempted conveyance in pursuance thereof by Henry A. Skaggs in 1889, and the acceptance by them of the purchase money. The timber operations constituted conspicuous acts of open hostility to Mrs. Livesay and the heirs of Mrs. McClung. ''Every owner is deemed to be cognizant of what is done upon his land and of who is in possession of it. The law exacts this measure of diligence from him. He must know whether strangers are entering upon it, and, knowing that, must inquire by what right they do so. In every instance, such inquiry will presumptively lead to discovery of the hostile claim. Hence, the owner is bound to know, and estopped from denying, all information to which such inquiry, prosecuted with reasonable diligence, would have led.'' *Pickens* v. *Stout, supra,* at page 432.

Other principles remain to be considered. Of course the facts in the cases to be cited in support thereof are not identical with the facts at bar, but the situations are sufficiently analogous for these principles of right and justice which controlled the decisions in those cases to be equally applicable here. ''A brother and his married sister being the owners of land in coparcenary, the latter in 1837 by a paper purporting to be a deed signed and acknowledged by her but without privy examination or joinder therein by her husband conveyed to the former her interest in said land, he being at the time in possession thereof and so continuing thereafter until his death in 1859, when his devisees succeeded him and continued in possession up to 1881, at which time the heirs of the sister brought suit for partition of the land, the sister having remained under coverture until a short time before her death, which occurred in 1879; the brother and his devisees during the whole period from 1837 to 1881, having occupied the land notoriously as sole owners, using it exclusively, taking the entire rents and

profits, making costly improvements thereon, and otherwise exercising over it such acts of ownership, as manifested an unequivocal intention to repudiate any right or claim of the sister in the land. *Held:* Notwithstanding said deed was void as a conveyance or contract of sale, it was sufficient prima facie to give notice of an intention to hold adversely; and the subsequent possession of the brother and his devisees, under the circumstances operated as a bar to the right of the sister, although she continued under coveture the whole time; and the plaintiffs' bill was properly dismissed." *Cooey* v. *Porter,* 22 W. Va. 120, syllabus 8. In the case of *Randolph* v. *Casey,* 43 W. Va. 289, 27 S. E. 231, it appears that the plaintiff, Nancy Randolph, a married woman, in 1880, together with her husband, undertook to convey a parcel of land which was her separate property, but which conveyance was void as to her by reason of the fact that the certificate of acknowledgment was defective as to her because it omitted certain words prescribed by the statute. On the ground of the defect in the acknowledgment she attempted by action in ejectment to recover possession of said land in 1894. The grantee and his assignee had remained continuously in possession of the land. The trial court, sitting in lieu of a jury, found for the defendant. This court sustained the finding of the trial court, and in the syllabus said: "Possession under a void deed is sufficient to give color of title as against the grantors, and to set in motion the statute of limitations, and the coverture of the appellant, who was the grantor, does not affect the question (*Irey* v. *Markey,* 132 Ind. 546, 32 N. E. 309), she being excepted from the disabilities mentioned in section 3, c. 104, Code, as to her sole and separate property."

In *Russell* v. *Tennant, supra,* Samantha Russell and her husband, by a deed of September 1, 1890, purported to convey to Jacob S. Tennant her 1/12 interest in certain land of which her father, James Stewart, died seized in February, 1889. Under said conveyance and other conveyances of certain of the brothers and sisters of Mrs. Russell, the grantee, Tennant, had possession of the land until his death in 1901, and his heirs had possession thereafter until and at the time of the institution of the suit in 1903. By her bill she asserted title to

a 1/12 interest in said land and demanded an accounting as to the oil which had been taken therefrom, on the ground of invalidity of the deed, the acknowledgment thereto being fatally defective for lack of conformity to the statute in existence at the time it was executed. This court sustained the action of the trial chancellor in dismissing the plaintiff's bill, and said, in point 6 of the syllabus: "A void deed, executed by one tenant in common to another, though inoperative to pass title, and whether regarded as constituting color of title or not, is sufficient to prove a disseizin of the party who executed it; it being a written memorial of a hostile claim asserted by the grantee and notice thereof on the part of the grantor." The power of attorney executed by Mrs. McClung and Mrs. Livesay in 1888, and the deed executed in pursuance thereof by Henry A. Skaggs, attorney in fact, in 1889, constituted memorials of claim hostile to the title of the said two women. This was peculiarly within their knowledge.

Unless we are to presume that Mrs. Livesay and Mrs. McClung "deliberately undertook to perform a solemn farce" when they attempted to execute the power of attorney to their brother, Henry, in 1888, it must be conceded that it was their deliberate purpose by that instrument to authorize him to sell and convey their respective interests in the land. This was accentuated by their acceptance of their respective shares of the purchase money after Henry Skaggs had made sale pursuant to the authorization of the power which all parties in interest then considered of full legal import.

The adverse and hostile claim of the defendants, other than Mattie Mann, must therefore prevail as against the belated assertion of title by the plaintiffs and Mattie Mann.

The decree of the trial chancellor, dismissing the bill and canceling the deeds under which the plaintiffs claim, is affirmed.

*Affirmed.*