# SEPTEMBER TERM.

## CHARLESTOWN.

COOEY *et als.* v. JOHN AND JACKSON PORTER.

Submitted June 8, 1883—Decided September 22, 1883.

1. The possession of one parcener is ordinarily regarded as the possession of all his co-parceners, and such possession being subordinate and not adverse can not, however long continued, operate as a bar to his co-parceners. (p. 124.)

2. A parcener in possession may disseize his co-parcener; and from the time of such disseisin his possession will be adverse. (p. 124.)

3. Where one parcener occupies the common property notoriously as the sole owner, using it exclusively, improving it and taking to his own use the rents and profits, or otherwise exercising over it such acts of ownership as manifest unequivocally an intention to ignore and repudiate any right in his co-parceners, such occupation or acts and claim of sole ownership will amount to a disseisin of his co-parceners, and his possession will be regarded as adverse from the time they have knowledge of such acts or occupation and claim of exclusive ownership. (p. 125.)

4. It is the *intention* of the tenant or parcener in possession to hold the common property in severalty and exclusively as his own, with notice or knowledge to his co-tenants of such intention, that constitutes the disseisin. (p. 125.)

5. The notice or knowledge required must be actual, as in the case of a disavowal or disclaimer of any right in his co-tenants; or the acts relied on, as in the case of expulsion, making costly improvements and exercising exclusive ownership, must be of such an open, notorious character as to be notice of themselves (p. 125.)

6. The character of the title, under which the disseisor asserts his ownership, is entirely immaterial. It is the fact, that he claims the property as his own, and not the goodness of his title, that makes his possession adverse. His claim may be founded on a defective or even a void deed or paper as well as upon a valid instrument. (p. 125.)

7. An adverse possession for a period of twenty years or more, under our statutes of limitations, effects a bar to the entry upon land by a married woman, notwithstanding she remained under coverture the whole of such period. (p. 128.)

8. *The case under decision:* A brother and his married sister being the owners of land in co-parcenery, the latter in 1837 by a paper purporting to be a deed signed and acknowledged by her but without privy examination or joinder therein by her husband conveyed to the former her interest in said land, he being at the time in possession thereof and so continuing thereafter until his death in 1859, when his devisees succeeded him and continued in possession up to 1881, at which time the heirs of the sister brought suit for partition of the land, the sister having remained under coverture until a short time before her death, which occurred in 1879; the brother and his devisees during the whole period from 1837 to 1881, having occupied the land notoriously as sole owners, using it exclusively, taking the

16.

entire rents and profits, making costly improvements thereon, and otherwise exercising over it such acts of ownership, as manifested an unequivocal intention to repudiate any right or claim of the sister in the land. HELD:

Notwithstanding said deed was void as a conveyance or contract of sale, it was sufficient *prima facie* to give notice of an intention to hold adversely; and the subsequent possession of the brother and his devisees, under the circumstances operated as a bar to the right of the sister, although she continued under coverture the whole time; and the plaintiffs' bill was properly dismissed. (p. 126.)

The facts of the case are fully stated in the opinion of the Court.

*W. V. Hoge* and *John E. McKennan* for appellant.

*Erskine & Allison* for appellees.

SNYDER, JUDGE:

William Porter died intestate in 1818 the owner of several tracts of land, among which was a tract of three hundred acres situated in Ohio county, and leaving eight children as his heirs-at-law. Prior to and at the time of his father's death John Porter, one of said children, was living upon said three hundred acres and he so continued to live thereon until his death in 1859, and his two sons, John and Jackson Porter, the defendants in this suit, have lived thereon ever since. In 1822 said John, the elder, received a deed for the interest of one of his brothers in said three hundred acres, and in 1834 he received a deed for the interests therein of all his other brothers and sisters excepting that of his sister Mary, the ancestor of the plaintiffs. The consideration paid by said John for said several interests was two hundred dollars to each of said brothers and sisters. In 1823 said Mary became the wife of John Cooey and remained such until the death of her husband in 1878 and she died in 1879. By a writing in the form of a deed of bargain and sale with formal covenants of seisin and assurances of title, dated April 6, 1837, signed by the said Mary alone and acknowledged by her as her deed, but without privy examination, before two justices of the peace of said Ohio county; the said Mary as sole grantor

therein, "in consideration of the sum of two hundred dollars to her in hand paid," granted and conveyed unto the said John Porter "all her right, title, claim and interest" in and to the said three hundred acres of land, describing the same therein by metes and bounds. This paper designates the grantor as "Mary Cooey, formerly Mary Porter, daughter and heir-at-law of William Porter, deceased." The said John and his sons, the defendants, have since the year 1837, continued in the open, exclusive and uninterrupted possession and occupation of said land by living upon and cultivating it and taking the rents and profits therefrom. During the whole of said time they claimed said land as their own and have placed improvements thereon costing about thirteen thousand dollars. Upon this state of facts William P. Cooey and others, being the heirs-at-law of said Mary Cooey, in March, 1881, instituted this suit in the circuit court of Ohio county against John and Jackson Porter, the sons and devisees of said John Porter, deceased, claiming a one undivided eighth interest in said three hundred acres of land and asking the partition and the assignment of the one-eighth thereof to them in severalty. The cause, having been matured, came on to be finally heard on the 20th day of July, 1882, when the court by its decree of that date dismissed the plaintiffs' bill with costs to the defendants. From this decree the plaintiffs obtained an appeal to this Court.

Many other facts and circumstances appear in the record which were to some extent discussed in the argument before this Court, but as they are merely collateral to the main issue I have omitted any statement of them as being immaterial in the view I take of the case. The only question to be decided in my view, and the one which will fully dispose of the whole controversy in the cause, is that involving the bar of the statute of limitations. Unless it can be shown that the plaintiffs, or the said Mary Cooey under whom they claim, were exempt from the operation of said statute, the exclusive and uninterrupted use and enjoyment of said three hundred acres of land by said John Porter and the defendants accompanied with an exclusion of all right in the plaintiffs or their ancestor, the said Mary Cooey, from the year 1837, to the year 1881, when this suit was instituted, is such an adverse

possession as is protected by the statute of limitations. *Shanks* v. *Lancaster*, 5 Gratt. 110.

The appellants rely upon two grounds to withdraw their claim from the bar of the statute : *First,* that the possession of John Porter, the father of the defendants, was that of a joint owner, a co-parcener with his sister Mary Cooey, the ancestor of the appellants; and *second,* that the said Mary Cooey was under the disability of coverture; and so claim that the statute has no application.

1.—It is undoubtedly true that the possession of one parcener is ordinarily regarded as the possession of all the others, and such possession, being subordinate and not adverse, cannot, however long continued, operate as a bar to his co-parceners. But it is equally true that such parcener in possession may disseise his co-parceners and from the time of such disseisin his possession will be adverse. That one co-parcener, joint tenant or tenant in common may disseise his co-tenants there can be no legal doubt. The law on that question is fully settled. *McClung* v. *Ross,* 5 Wheat. 116; *Purcell* v. *Wilson,* 4 Gratt. 16; *Clarke* v. *McClure,* 10 *Id.* 305; *Caperton* v. *Gregory,* 11 *Id.* 505. But what acts will amount to a disseisin is not always easily determined. While on the one hand a silent possession, accompanied with no act which can amount to an ouster or give notice to his co-parceners that his possession is adversary, will not be construed into a disseisin or adverse possession, still on the other hand, where one co-parcener occupies the common property notoriously as the sole owner, using it exclusively, improving it and taking to his own use the rents and profits therefrom and otherwise exercising over it such acts of ownership as manifest unequivocally an intention to ignore and repudiate any right or claim of his co-parceners, such occupation will amount to a disseisin of his co-parceners, and his possession will be regarded as adverse from the time they have knowledge of such acts or occupation. Tyler on Eject. & A. E. 927. It may be affirmed as a general rule, well established, that if one joint owner show by his acts or words that he means to hold out his co-tenants and actually exclude them, it is an ouster and his possession becomes adverse. *Humbert* v. *Trinity Church,* 24 Wend. 587; *Brackett* v. *Norcross,* 1 Greenl. 89; *Har-*

*grave* v. *Powell*, 2 Dev. & Batt. L. 97; *Cloud* v. *Webb*, 10 Dev. 290.

The authorities it seems to me fully sustain the doctrine that it is the *quo animo*, the intention of the tenant or parcener in possession to hold the common property in severalty and exclusively as his own, with notice or knowledge to his co-tenants of such intention, that constitutes the ouster; therefore, any open, notorious act evincing such intention, or any explicit disclaimer or denial of the claims of his co-tenants, or the assertion of a several and individual estate or title in himself to the entirety of the common property, will operate as a disseisin or ouster of his co-tenants, and from the time they have notice or knowledge of such act, disclaimer or assertion of title his possession will be adverse and the statute of limitations will commence to run—*Clymer* v. *Dawkins*, 3 How. 674; *Jackson* v. *Smith*, 13 Johns. 406; *Caperton* v. *Gregory*, 11 Gratt. 505; *Terrill* v. *Murray*, 4 Yerg. 104; *Peeler* v. *Guilkey*, 27 Tex. 355; *Lodge* v. *Patterson*, 3 Watts 74.

The notice or knowledge required, must be either actual as in the case of a disavowal or disclaimer; or the acts relied on as an ouster, as in the case of expulsion, making costly improvements and exercising exclusive ownership, must be of such an open, notorious character as to be notice of themselves or reasonably sufficient to put the disseised co-tenants on enquiry, which, if diligently pursued, will lead to notice or knowledge in fact—*Lefavour* v. *Homan*, 3 Allen 354; *Lodge* v. *Patterson, supra.*

The nature or character of the title or claim under which the occupying tenant asserts his ownership is entirely immaterial. It is the fact that he claims the property as his own and not the goodness of his title which makes his possession adverse. His claim may be founded on a defective or even a void deed or paper as well as upon a valid instrument, or it may be simply *in pais* without any paper or color of title and resting wholly upon a naked assertion of title or claim in himself accompanied by exclusive possession—*Caperton* v. *Gregory, supra; Jackson* v. *Brink*, 5 Cow. 483; *Jackson* v. *Ellis*, 13 Johns. 118; *Jackson* v. *Long*, 7 Wend. 170; *Leonard* v. *Leonard*, 10 Mass. 231; *Jackson* v. *Huntington*, 5 Pet. 401;

*Towle* v. *Ayer*, 8 N. H. 57 ; *Walker* v. *Wilson, Id.* 217 ; *Comins* v. *Comins*, 21 Conn. 413 ; Tyler on Eject. & Ad. E. 887, and cases cited.

In the case at bar it is admitted that John Porter, the father of the appellees, entered upon the three hundred acres of land in controversy as the common property of himself and his co-parceners, his brothers and sisters, without any claim or assertion of an exclusive right or title in himself. In 1834 and prior thereto he purchased the interests of all his co-parceners in said land, except that of Mrs. Cooey, the ancestor of the appellants, and he thereby became the absolute owner of seven eighths of the land. He thereafter continued in possession of the whole property until 1837, without any denial or disclaimer of the interest of his remaining co-parcener, Mrs. Cooey, and therefore, his possession to that date, at least, must be regarded as also the possession of Mrs. Cooey. Up to this period it must be admitted that his possession, being subservient to hers, could not be adverse and the statute did not run against her right or title. On April 6, 1837, he received from Mrs. Cooey the paper of that date hereinbefore described. The existence of this paper presents the material question, whether or not its execution by Mrs. Cooey to John Porter, and the subsequent conduct of the parties, furnishes sufficient evidence of an ouster of the possession of Mrs. Cooey and a conversion of the common possession of John Porter into a several, adverse and exclusive possession in his own right.

It is contended by the appellants that said paper cannot be used as evidence for any purpose; because at the time it was executed Mary Cooey was a married woman, and her husband being no party to it, and moreover there being no certificate to it of her privy examination, it is void for any and all purposes. In support of this position they cite, *Harvey* v. *Pecks*, 1 Munf. 518, and *Kidd* v. *Alexander*, 1 Rand. 456. These cases tend to show that said paper is void as a contract and ineffectual as a grant or conveyance. But conceding the authority of these cases and admitting that said paper is absolutely void and of no effect whatever either as a deed or contract of sale, it does not necessarily follow that it cannot be used as evidence for any purpose. The paper and

its contents exist as physical facts, and it must be conclusively presumed that Mrs. Cooey and John Porter, the parties thereto, were fully cognizant of its contents. They must have had some object in the execution of it. That object is apparent. It was, on the part of Mrs. Cooey, to relinquish to John Porter her interest in the three hundred acres of land therein mentioned; and on the part of John Porter to acquire said interest from Mrs. Cooey. They could, from the character of the paper, have had no other object or purpose. And while the paper did not in fact or in law effect that object, it is certainly evidence of an intention on their part to effect it. Unless we presume that they deliberately undertook to perform a solemn farce, it must be conceded that Mary Cooey intended by said paper to confer upon John Porter all her interest in said land, and that after its execution both she and the said John believed that the said John had obtained from her all of said interest. And he having intended to acquire and believing he had acquired said interest, it must be presumed that his possession from that time was with an intention to claim and hold the same under and by virtue of said paper, and she being a party thereto and entertaining the same belief as to its effect and purpose, necessarily had notice of his intention so to hold the said interest. This under the rule of law before stated, would operate as an ouster and from that time make the possession of said John adverse to that of the said Mary Cooey. The fact, that the paper, upon which the adverse claim is founded, is wholly void, is, as we have seen, entirely immaterial. The intention to hold the property as his own exclusively, with notice of that intention to his co-parcener, is the criterion by which the law determines the character of his subsequent possession. *Caperton* v. *Gregory*, 11 Gratt. 505.

In this case the said paper was in my opinion sufficient evidence to establish both the intention of John Porter to hold said land as his own absolutely and also notice of that intention to Mrs. Cooey. That such was the intention and understanding of both parties is strongly confirmed by their subsequent conduct. In fact their subsequent conduct is entirely inconsistent with and can not be explained upon any other hypothesis. From the time this paper was executed

in 1837, John Porter continued in the exclusive possession of the land, using and controlling it as his own, paying the taxes, making expensive permanent improvements, taking all the rents, issues and profits, without protest or any objection whatever from Mrs. Cooey, and so continued to do until his death in 1859, and thereafter as his devisees, his sons, the appellees, continued to do the same without any claim or objection up to the year 1881 when this suit was brought. Mrs. Cooey lived until 1879 and so far as the record discloses she never during her lifetime after the execution of said paper claimed to the appellees or their father that she had any interest in said land, and it was not until after her death that any claim was set up to the knowledge of the appellees or their father for any interest in said land.    I am, therefore, clearly of opinion that said paper taken in connection with the subsequent conduct of the parties operated as a disseisin of the said Mary Cooey, and from the date of its execution the possession of said John Porter became adverse to her and so continued through him and the appellees until the institution of this suit in 1881, a period of forty-five years.    The adverse possession for a term of ten years being an absolute bar by the statute of limitations, it follows inevitably that the claim of the appellants is barred unless the fact that their ancestor, Mrs. Cooey, was a married woman exempts their claim from the operation of the statute.

Does the fact that Mary Cooey was a married woman in 1837, when she was disseised of her possession of the land in controversy, and so continued until her death in 1879, exempt the claim of the appellants from the bar of the statute of limitations?    Without relying upon the construction given to the act of March 30, 1837, by the court of appeals in Virginia in *Caperton* v. *Gregory*, 11 Gratt. 511, wherein it was held that the seisin of the husband of a freehold estate in the land of his wife subjected her right to the bar of the statute to the same extent as if she were *sui juris*, there can be no question that the right of Mary Cooey for the recovery of the land in this case was barred before her death, notwithstanding her coverture, either under the statute of Virginia—Code of 1860, chapter 149, section 4, or the statute of this State—Code of 1868, chapter 104, section

4.   The third section of the latter statute excepts persons under certain disabilities, among which are married women, from the general limitation of ten years as declared in the first section, and then follows the said fourth section which is as follows:

"4. The preceding section is subject to these provisions: that no such entry or action shall be made or brought by any person, who at the time at which his right to make or bring the same shall have first accrued, shall be under any such disability, or by any person claiming through him, but within *twenty* years next after the time at which such right shall have first accrued, although the person under disability at such time, may have remained under the same during the whole of such twenty years, or although the term of ten years from the period at which he shall have ceased to be under such disability, or have died, shall not have expired."

The statute, as we have seen, having commenced to run against the said Mary Cooey, under whom the appellants claim, in the year 1837, and so continued until her death in 1879, a period of forty-two years and more than twice the period allowed by the aforesaid statute to complete the bar of her right of entry or action, consequently, her right to recover the land in controversy was barred before her death, and of course no right of action could descend from her at her death or exist in the appellants thereafter.   I am, therefore, of opinion that there is no error in the said decree of the circuit court and the same must be affirmed with costs to the appellees and thirty dollars damages.

The Other Judges Concurred.

Decree Affirmed.