# CHARLESTON.

## MARTIN v. THOMAS.

Submitted June 17, 1904—Decided November 15, 1904.

1. INNOCENT PURCHASER—*Executory Contract.*
   A court of equity will not enforce, against an innocent purchaser, who has paid the purchase money and taken legal title to land, without notice, a prior executory contract for the purchase of the land.   (p. 222).

2. ORIGINAL SALE.— *Innocent Purchaser.*
   An answer which seeks to defeat the right of a *bona fide* purchase of land on the claim that the party filing the answer had made a prior executory contract for its purchase from the same owner, must aver that when the plaintiff paid purchase money and took title he had notice of such prior contract.   (p. 222).

3. POSSESSION OF LAND—*Notice—Subsequent Purchaser.*
   To make possession of land notice to subsequent purchasers, such possession must be inconsistent with the occupant's apparent or record title, because such possession will be presumed to be under such title rather than under another right.   (p. 222).

4. POSSESSION BY PARCENER AS NOTICE TO SUBSEQUENT PURCHASER.
   The mere sole possession of one coparcener or tenant in common is not notice to subsequent purchasers of shares of other coparceners or tenants in common of the right of such occupant to those shares under a prior unrecorded purchase of them by such occupant.   (p. 223).

5. INNOCENT PURCHASER—ADVERSE CLAIMANTS—*Equitable Defense.*
   Section 20, chapter 90, Code 1891, allowing equitable defense under a writing for the purchase of land applies only to suits involving possession, not to a contest for the land between two purchasers of the same land from the same vendor.   (p. 225).

Appeal from Circuit Court, Preston County.

Bill by Isaac P. Martin against Elisha Thomas. Decree for defendant, and plaintiff appeals.

*Reversed.*

P. J. CROGAN, for appellant.

J. A. BROWN, for appellee.

BRANNON, JUDGE:

Elisha Thomas and Elizabeth Corbin were joint equal own-- ers of a tract of 244 acres of land in Preston county. Mrs.. Corbin died childless, and her half went by descent to kindred,. Elisha Thomas, a brother, the children of a dead brother, Frank. Thomas, and three sisters, Hannah Coombs, Mary Ann Cole and Permelia Jenkins. Elisha Thomas acquired the share of Per- melia Jenkins, and owning his original half, equal to five tenths, and one tenth as a brother of his dead sister, Elizabeth Corbin, and the one-tenth acquired from Permelia Jenkins, he owned: seven tenths. Hannah Coombs and Mary Ann Cole by deed! 28th March, 1898, and the heirs of Frank Thomas by deed of same· date conveyed their shares to William G. Brown, which deeds· were for money consideration cash paid. Brown being thus- owner of three tenths, conveyed the same to Isaac P. Martin by deed 28th December, 1898, for the consideration of $1,000. Martin brought a chancery suit against Elisha Thomas conced-- ing that Thomas owned seven tenths of said land, and claiming himself three tenths, and asking a partition according to such ownership. Elisha Thomas defended the suit, claiming the whole tract, denying Martin's right to any share on the ground· that in December, 1895, he had entered into a written contract with an agent of Mrs. Coombs, Mrs. Cole and the heirs of Frank. Thomas, not recorded, whereby they sold their shares to him. He claimed that the deeds to Brown were illegal, wrongful and` not on adequate consideration, and denied Martin's right. He· asked a decree for the whole tract. The court dismissed the· bill, and Martin appealed.

The answer and amended answer which were objected to, but admitted, present no defense to defat the bill. The plaintiff' is a purchaser of the shares of Mrs. Cole, Mrs. Coombs and Frank Thomas for valuable consideration, and the answers charge no actual notice on Martin, or his grantor Brown, of the· right of Elisha Thomas when they obtained the legal title. When two persons claim the same land as purchasers from the same vendor, if neither has the legal title, but that is still in the vendor, the purchaser first in time has preferential right to call for the legal title; but where the junior has paid purchase· money and received a conveyance of legal title he is accorded preference in equity, since his legal title gives him superiority

in a court of common law. *Urpman* v. *Lowther Oil Co.,* 53 W.
Va. 501, (point 10). In 23 Am. & Eng. Ency. L., (2d Ed.)
475, is a full discussion of this important subject and a refer-
ence to the many authorities. Such a purchaser has the legal
title, and his claim upon the conscience of a court of equity,
if he is honest, is as high as that of his adversary. "No party
can occupy a higher ground than that in a court of equity;
and if he can maintain that position, his title is established and
his position impregnable." *Brisco* v. *Ashby,* 24 Grat. 473. We
find in 1 Am. & Eng. Dec. in Equity, 249, that equity "will
not interfere, either for relief or discovery, against a *bona fide*
purchaser of a legal estate for valuable consideration without
notice of the adverse title, or of any circumstance affecting the
apparent right to that which he purchases." "Courts of equity
will not take the least step imaginable against an innocent pur-
chaser in such a predicament; and will, on the other hand, al-
low him to take every advantage which the law gives him; for
there is nothing which can attach itself upon his conscience in
such a case in favor of an adverse claim." 2 Story Eq. section
1503. "Relief of cancellation will not be granted against a
*bona fide* purchaser for value without notice of the fraud or
other ground for cancellation." 6 Cyc. 319. This rule is uni-
versal. *Turk* v. *Skiles,* 45 W. Va. 82; *Lough* v. *Michael,* 37 *Id.*
679; *National Bank* v. *Harman,* 75 Va. 609; *Carter* v. *Allen,*
21 Grat. 241. Seeing that the title of Martin is good, unless
he and Brown had notice of the claim of Thomas, surely those
answers should charge notice. One who would nullify a deed
because fraudulent as to creditors must aver notice against the
purchaser, because his title is good, unless he had notice, just as
Martin's title is. Hogg, Eq. Proced. section 384.

Though neither of the answers charges actual notice, yet
one of them charges that in pursuance of his purchase of the
interests of Mrs. Coombs, Mrs. Cole and Frank Thomas, Elisha
Thomas took actual possession, and such possession, prior to
the deeds to Brown and Martin, is alone notice of the rights of
Elisha Thomas under said executory contract of purchase.
*Urpman* v. *Lowther Oil Co.,* 53 W. Va. 501 (pt. 11). This raises
the question whether when one of several coparceners is in pos-
session, and others not themselves in actual possession, and that
one in possession makes an executory contract to purchase the
shares of those others, such possession of that one is construc-

tive notice to the world of his purchase, so as to warn all persons from purchasing the shares of those purchasers not in possession themselves. We know that the possession of one coparcener is the possession of all, in the absence of an actual ouster; his possession is not adverse to, but consistent with, the rights of his co-owners. In 23 Am. & Eng. Ency. L., (2d Ed.) 506, is the rule that to give possession the force of notice, "The possession must be inconsistent with the apparent or record title of the grantor, else it will not be sufficient to put upon the purchaser the duty of making further inquiry; the reason being that in such case the possesson is presumed to be under the grantor's title." Many cases are cited for the text. Warvel on Vendors p. 330. 3 Washburn R. Prop. section 2201, says: "No inference is to be deduced from possession when it is consistent with the possessory title on record." Apply this principle to this case. Elisha Thomas was in possession under his joint tenancy with Elizabeth Corbin, and on her death with her heirs. The recorded title showed his right. One had right to ascribe his possession to his own apparent title on the record. He was, after Mrs. Corbin's death, as one of her heirs, a coparcener in her half with her other heirs, and the law would ascribe his possession, both to his right as original owner of an undivided moiety and as a coparcener with other heirs in the Corbin moiety under her recorded right. His possession would not be inconsistent, but would be consistent with, the rights of her other heirs.

*Mullins* v. *Nickel,* 25 Mont. 525, holds in point with our case: "In so far as persons other than the tenants themselves are concerned, the actual occupancy of one tenant in common is the rightful possession of all the owners, and if a title under which they might hold is on record and is consistent with the occupancy, the possession must be referred to the record, and will not be constructive notice of any other title." "Where a person occupies premises, and the record shows a conveyance under which he would be entitled to the possession, in such case his possession will be referred to the record title, and a subsequent purchaser will not be charged by it with any other undisclosed title or equity which the occupant may have. The possession is a matter which may incite inquiry; but the fact that the occupant has placed upon record written evidence of his right,.

with the terms of which his possession is consistent, arrests in-- quiry at that point, and reasonably informs the purchaser that he may rest upon the knowledge thus obtained. Thus a wife was entitled to an interest in land by inheritance. A partition was had with other heirs, but the deed made thereupon was to both husband and wife, vesting title to her portion in them as tenants in common, and as against lien creditors of the husband her possession was held notice only of an undivided half inter- est." Webb on Record Title, section 232. The deed was made to husband and wife by mistake by the other heirs after volun- tary partition. It was the wife's land. The creditor knew nothing of her equity to the whole. *Farmers Bank* v. *Wallace,* 45 O. St. 152, (12 N. E. 439). A tenant in common in pos- session purchased the interest of his co-tenant not in possession, and failed to record his deed, and there is no visible change in the possession except some improvements, and later the interest of the co-tenant who had conveyed to his co-tenant was sold on execution. The purchaser, who had no actual knowledge of the prior conveyance, is not chargeable with notice from pos- session of the co-tenant's right under the deed. *May* v. *Stur- divant,* 75 Ia. 116, (9 Am. St. R. 463). A possession justified by the record title is referrable to it, and is not notice of any other title unrecorded which may have been subsequently ac- quired. *Dutton* v. *McReynolds,* 31 Minn. 66. There is much authority for the position that possession begun under one right is not notice of a later acquired right. 2 Pom. Eq. section 617. However this may be generally, surely the occupation by one heir might be assumed to be only under his own heirship right, and would not hint that he had a secret right for his brother's share. Must the purchaser go to him to inquire if he has ac- quired his brother's share? May he not assume that he has only his own apparent right? Wade on Notice, section 297, says that when one is in possession under a recorded title which would justify that possession, possession is attributed to it, and is not notice of any undisclosed title or interest which the pos- sessor may have.

For these reasons the answers on their face are not good to defeat Martin's right or call for specific performance by taking title from him as a *bona fide* purchaser.

The answer charges that the deeds to Brown are fraudulent. Wherein we are not told; no facts of fraud are given. It also

charges inadequacy of consideration. What has Thomas to do with that? This would not hurt the deeds even between the parties thereto. *Wood* v. *Harmison,* 41 W. Va. 376.

The answers appeal to section 20, chapter 90, Code, and say that the deeds to Brown and Martin are of no force by reason of that statute, which reads: "A vendor, or any person claiming under him, shall not at law recover against a vendee, or those claiming under him, land sold by such vendor to such vendee, when there is a writing stating the purchase, and the terms thereof, signed by the vendor or his agent." This statute has no point in this case. By common law, a title bond or executory contract for sale of land stipulating for future conveyance of legal title conveyed no right to the land whatever. It would only be basis for action for damages for non-conveyance. A court of law knew no right to land save the legal title. Such an instrument gave an equity recognized in equity as basis for specific performance. At law the vendor could bring ejectment or writ of right, repudiate the contract, and turn the vendee out of possession, even if he had paid all the purchase money. The Virginia statute changed this by allowing the purchaser to plead his equity in such action for its defeat, if he had fully complied with the contract. Our statute dispenses with performance. Thus, an equitable title is now recognized in a law court. It does not give the purchaser right to recover possession of the vendor, unless it provide for possession; but if let into possession, he can hold it. Newell, Eject. p 435, 318; Warvell on Vendors, section 874. The vendor's only remedy is in equity to sell the land. The statute was made only to remedy this defect in the common law, to give some force to the writing in a law court for defense of possession. The statute applies only in actions to recover possession in law courts. *Davis* v. *Teays,* 3 Grat. 284; *Suttle* v. *Railroad,* 76 Va. 284. This is not an action of ejectment or unlawful detainer involving possession. This is a suit in equity involving a right to some interests between conflicting claimants under a common vendor; not an action merely involving right between vendor and vendee. If Mrs. Cole, Mrs. Coombs and the Frank Thomas heirs were to sue Elisha Thomas for possession, he could use his contract under the statute against them. Or if Martin had notice of Elisha Thomas' purchase, and were to sue for admission to possession at law, Thomas

could use the contract. This is a suit in equity involving the right under a common vendor to the same thing—conflicting claims. The statute is irrelevant, because the solution of the controversy depends on the equity law as between two purchasers of the same thing, depending not merely on a sale, but the superadded question whether the one party is a *bona fide* purchaser, or his right is inferior by reason of fraud.

I do not understand that adverse possession is involved. Viewed without the right of Elisha Thomas under the sale, there is no show of ouster as between coparceners. Viewed with that contract, as possession of the purchaser under an executory contract is not adverse to his vendor or those under him, it cannot be sustained.

Another reason against Elisha Thomas is delay. Thomas claims that he bought the contested share from an agent of the parties. That agent says the contract was conditional. He was to have the shares, if he paid for them in a given time, which Thomas himself, says was four months. He also says himself that it was a sale "providing I should pay in a certain time." Not having paid within that time, we may fairly say it never became a contract. In this view, he could not enforce it. But say that it was not conditional. The writing was mislaid; but a paper was filed pending the cause as the paper, though not clearly proven. It fixed no time for payment, but provided for a deed on payment. It was thus payable at once. Payment was often demanded of Thomas; but he did not pay or offer to do so. He was insolvent, unable to pay. The contract dates 18th December, 1895. The agent who sold to Thomas considered the arrangement ended. Three years afterwards Brown purchased. Why wait longer when Thomas was utterly insolvent, as he himself says? He could not perform. Thomas never sought performance until he filed his answer in December, 1899. If these interests had not been sold to Brown, I would say that Thomas could not enforce his alleged contract, because to get equity to grant performance one must show himself prompt and willing to comply on his part; but these shares have been conveyed to Brown, and he has paid four hundred dollars, and Brown conveyed to Martin, Martin paying one thousand dollars. Thus the condition of things has changed; the rights of Brown and Martin have intervened, and they must lose heavily,

without hope of indemnity, if Thomas is allowed to awake from his supineness and get advantage from his negligence. Equity will not grant specific performance of a contract to convey land when the vendee has unreasonably delayed in performing the contract and asking relief, conditions have changed in the situation of the parties, and it would work hardship and loss to the vendor or other persons affected thereby. *Urpman* v. *Lowther Oil Co.,* 53 W. Va. 502; *Dyer* v. *Duffey,* 39 *Id.* 149. I have assumed that the agent had power to sell the contested shares, and that there was a valid contract, though these facts are contested, and there is grave reason to doubt them; but as they involve no law necessary to be stated, I will not prolong this opinion, now too long for the case, by discussing them. I add that even if the answers did charge actual notice of the alleged sale, the evidence is doubtful and short of sustaining it, whereas the law requires full proof as it is a charge of fraud.

We reverse in part the decree of the circuit court, and do adjudge, order and decree that Isaac P. Martin is entitled to have partition made between him and Elisha Thomas of the tract of land in the record of the cause described, assigning and confirming to be held by him free of other parties, respectively in severalty to said Martin three tenths and to said Thomas seven tenths, according to quantity and quality; and the cause is remanded to the circuit court with direction to make such partition.

*Reversed.*

NOTE BY BRANNON, JUDGE:

I discuss the question of notice, because raised by counsel; but, in fact, the answer did not charge notice.