No. 24-ICA-115 – *Antero Resources Corporation v. Elwanda J. Pike, in her capacity as representative of the Estate of Rufus Fordyce Pike, John Kent Pike, Jr., Daniel Edward Pike, James P. Moffitt, Tanya L. Yoho, Ted Arthur McCullough, Robert A. Borchers, Ritchie Petroleum Corporation, AMP Fund III, LP, and Diversified Production LLC, successor in interest to Alliance Petroleum Co. LLC*

**FILED**

**March 19, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

WHITE, J., concurring, in part, and dissenting, in part:

The facts of this case are quite rare. This case is all about cotenants ousting another cotenant from a cotenancy, when none of the parties had actual knowledge of the existence of the cotenancy (until shortly before the lawsuit was filed). The law is clear that the ouster of a tenant must be done deliberately and intentionally. I dissent because the majority opinion has taken vague precedents and shoehorned them onto these unique facts, and the resulting effect is to permit one tenant to oust another accidentally, merely by possessing the disputed cotenancy property. In doing so, the majority opinion has – unintentionally – muddied the clarity that is supposed to be provided by recorded titles, and it employed confusing, outdated case law that imperils the titles of thousands of mineral-holding cotenants in West Virginia.

Distilled down to their essence, these are the facts: the primary respondents are the Pike brothers (Rufus Fordyce Pike, John Kent Pike, Jr., and Daniel Edward Pike). Their great-grandparents (Ingram and Margaret A. Fordyce) assembled a roughly 97-acre tract in Tyler County; when they died, it was inherited equally by the brothers' grandfather (Rufus G. Fordyce) and their great-aunt (Daisy Broadwater (or Everhart)). In 1942, the grandfather (who lived in Cook County, Illinois) deeded his interest in the land to himself,

1

the brothers' grandmother (Edna), and their mother Margaret Fordyce Pike (who the deed noted lived in Hennepin County, Minnesota) as joint tenants with a right of survivorship. Ms. Pike was born in Pittsburgh, Pennsylvania, and as far as the Pike brothers know, she never lived in West Virginia. Regardless, for the seven years after 1942, the record is undisputed that Great-Aunt Daisy owned 50%, and the brothers' grandma, grandpa, and Mom were 50% owners.[1] The 1942 cotenancy deed was recorded in Tyler County, and any competent title search would have revealed it.

In 1949, Great-Aunt Daisy, grandma, and grandpa deeded their interests to Dora Jewell. For reasons not contained in the record, the 1949 deed makes no mention of Ms. Pike's interest.

Now, petitioner Antero Resources Corporation ("Antero") makes claims that might leave the impression that the 1949 deed attempted to convey the entire property, the full fee simple interest, to Mr. Jewell. The majority opinion suggests those claims are true when it says the 1949 deed "conveyed through color of title all the cotenancy's interests in the surface and oil and gas estates to Dora Jewell[.]"[2] But that is not the case. The 1949 deed only conveys to Mr. Jewell the interests that were owned by the brothers' Great-Aunt Daisy, grandma, and grandpa (that is, a five-sixth share), because that is all that Great-Aunt

---

[1] I recognize that a one-half portion of the oil and gas was carved off in a 1913 deed of 7 acres of the tract. However, for simplicity, I am omitting this fact to simplify the math.

[2] ___ W. Va. at ___, ___ S.E.2d at ___ (Slip. Op. at 24).

2

Daisy, grandma, and grandpa *could* convey. "It is certainly law, that a conveyance by one co-tenant of a part of a tract . . . cannot give the grantee any greater right thereto than held by his grantor[.]" *Boggess v. Meredith*, 16 W. Va. 1, 28 (1879). The deed's language does not attempt to convey the fee simple interest; the only description in the 1949 deed of what was being sold pertains to the boundaries, which it describes as "certain tracts or parcels of real estate" previously owned by the brothers' great-grandparents. The remaining one-sixth share continued to be owned by the brothers' mother, Ms. Pike. As a matter of law, Mr. Jewell and Ms. Pike became tenants in common in 1949.[3] Upon the death of Ms. Pike in 2005, the Pike brothers inherited her share of the cotenancy.

Moreover, when discussing the 1949 deed, Antero and the majority opinion repeatedly use the phrase "color of title" when discussing Mr. Jewell's and his successors' interest, but I do not think this use of the phrase is supported by case law. The Supreme Court of Appeals of West Virginia ("SCAWV") has offered the following definition of the phrase:

> It has been said that color of title is merely a judicial fiction which is used in the administration of the statute of limitations for beneficent purposes. In law color of title is not title at all. *It is a void instrument having the semblance of a muniment of title*, to which, for certain purposes, the law attributes certain qualities of title. With respect to adverse possession, color of

---

[3] *See* Syl. Pt. 4, *Herring v. Carroll*, 171 W. Va. 516, 300 S.E.2d 629 (1983) ("A joint tenant may convey his undivided interest in real property to a third person. When one of two joint tenants conveys his undivided interest to a third person the right of survivorship is destroyed. Such third party and the remaining joint tenant hold the property as tenants in common.").

title is that which has the semblance or the appearance of title, legal or equitable, but which is in fact no title. In the absence of fraud or breach of trust in its creation, any written instrument, however defective or imperfect, purporting to pass or convey title to land, which defines the extent of the claim under it, is color of title.

*State v. Davis*, 140 W. Va. 153, 168, 83 S.E.2d 114, 122-23 (1954) (citations omitted, emphasis added).

To be clear, no one in this case alleges that the 1949 deed is a void instrument, rather, Antero is simply misconstruing the deed's reach to suggest it conveyed a fee simple interest. Hence, if we are going down the "color of title" road, then to the extent Antero and its predecessors are claiming under "color of title" pursuant to the 1949 deed, that title extends only to a five-sixths cotenancy share of the disputed tract because that is all that the actual, written 1949 deed purports to convey.[4] Actual, written title to the property under the 1942 deed affords the Pike brothers "color of title" to a one-sixth cotenancy share of the tract.

---

[4] "A co-tenant can convey no greater interest than his own, and any deed purporting to convey more is inoperative as against those co-tenants who do not join therein. Such a deed of itself raises no presumption of an adverse claim, even though it is recorded and the grantee pays all the taxes for the statutory period." Note, *Property – Tenancy in Common – Deed of Entire Estate in Severalty by One Co-Tenant to A Stranger – Adverse Possession Under Such A Deed*, 30 Yale L.J. 422, 423 (1921) (citations omitted). Stated differently, "Tenants in common hold their interest in realty independent of each other. Neither one can do an act respecting the title which will bind the others. Even if he essays to convey the whole estate it will operate only to pass the title to his own share. His grantee becomes only a new tenant in common with the remainder of the original holders." *Le Vee v. Le Vee*, 183 P. 773, 774 (Or. 1919).

What is problematic with this case, and what gives it such a rare unicorn-like quality in the law, is that it appears Mr. Jewell had no idea he was a cotenant with Ms. Pike. If a title search was performed for Mr. Jewell in 1949, it was done incompetently because it missed the 1942 deed creating the cotenancy.[5] Likewise, Ms. Pike seems to have forgotten she owned the one-sixth share of a cotenancy in rural West Virginia as she lived out her life in Hennepin County, Minnesota. In other words, in 1949, both tenants in common were ignorant of the existence of the cotenancy.

Worse, it appears that all of Mr. Jewell's successors also failed to find the 1942 deed through title searches. It was not until 2014, when Antero was securing leases and preparing to drill and frack the disputed tract, that an agent doing title research for Antero found the 1942 deed, contacted the Pike brothers on Antero letterhead, and informed them of their one-sixth cotenancy share in the tract. This information was bolstered by a phone call from one Pike brother to Antero to relay evidence supporting the brothers' cotenancy. A long-time well operator on the tract, Diversified Production, performed a similar deed search and concluded that Ms. Pike continued to own a share of the tract after 1949; a letter in the record contains the company's assessment that the Pike brothers should receive her share of any oil and gas royalties generated from Diversified's

---

[5] As an attorney who routinely conducted title searches before becoming a judge, I can say that missing a deed in the chain of title that was recorded just seven years prior is equivalent to missing a tort statute of limitations when your client calls you every day for two years reminding you to file a lawsuit. It should never happen.

wells. Nevertheless, Antero entered the tract (with the consent of Mr. Jewell's successors) and started drilling and extracting oil and gas without securing consent from the Pike brothers, and without paying them any share of the royalties.

The starting point in this case is that the Pike brothers and Mr. Jewell's successors are cotenants, so I need to lay out the basic rules of cotenants before moving to the reasons for my dissent. Cases galore, from West Virginia and other jurisdictions, state that any tenant in common may occupy and use the jointly owned premises. Any tenant may pay taxes and appropriate rents and profits. Possession of the premises is presumed to be consistent with the tenant's title, even if that possession is "long-continued, visible, uninterrupted and even exclusive[.]" *Smith v. Libby*, 119 A. 195, 197 (Me. 1922). As the treatise *Tiffany on Real Property* provides:

> Each cotenant has a right to enter upon, explore and possess the entire premises, and to do so without the consent of his cotenants, though he may not do so to the exclusion of his cotenants to do likewise. *It is conceptually impossible for tenants-in-common to trespass against each other*. A tenant in possession is presumed to respect and recognize the rights of his cotenants until the contrary clearly appears, and his possession is presumed to be rightful and not to the exclusion of others having equal rights.

2 Tiffany Real Prop. § 426 (3d ed. 2024) (emphasis added).

My central reason for dissenting is because West Virginia's cases fail to make a clear distinction between principles of adverse possession, and principles for the ouster of a cotenant from a tenancy. Adverse possession is, effectively, a wrongful trespass

6

that ripens into title. The doctrine of adverse possession involves a stranger to the true title owner entering land, holding control "adversely" because it is without permission or right, and holding uninterrupted control for the entire statute-of-limitation period (ten years in West Virginia).[6]

The concept of a cotenancy is easily distinguished from adverse possession in that each and every tenant is a title owner who has the individual right to enter the land, use it as their own, pay taxes on the land, build structures like barns or condominiums or apartments or fences, extract resources, and collect rents and profits. The actions of one tenant are presumed to be done for the benefit of all the other tenants. "The relations between the joint owners are presumed to be amicable rather than hostile, and the acts of one affecting the common property are presumed to be done for the common benefit." Annotation, *Possession by one claiming under or through deed or mortgage by cotenant*

_____

[6] Syl. Pt. 3, *Somon v. Murphy Fabrication & Erection Co.*, 160 W. Va. 84, 232 S.E.2d 524 (1977) ("One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title."). *See also*, Syl. Pt. 1, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010) ("A person claiming a prescriptive easement must prove each of the following elements: (1) the adverse use of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used.").

*as adverse to other cotenant*, 27 A.L.R. 8 (1923). As one court said, one tenant keeping exclusive possession of the land along with "[p]aying mortgage and taxes or maintenance expenses, and providing for upkeep of the property, do not constitute acts sufficient to establish a claim of right for purposes of adverse possession as against a co-tenant." *Perez v. Perez*, 644 N.Y.S.2d 168, 170 (1996). One cotenant may bring an unlawful detainer action to "recover the possession of the whole land [from a stranger] without joining his cotenant in the action." Syl. Pt. 3, *Voss v. King*, 33 W. Va. 236, 10 S.E. 402 (1889). One cotenant may lease his or her share without the permission of another cotenant, and the lessee may enjoy possession of the land and cannot be ousted by the other cotenant. *Smith v. New Huntington Gen. Hosp.*, 84 W. Va. 281, 99 S.E. 461 (1919). "Each co-tenant [has] the right to enter on the land himself or by lessee and explore for gas and market the gas if found." *Smith v. United Fuel Gas Co.*, 113 W. Va. 178, 180-81, 166 S.E. 533, 534 (1932).[7]

Stated succinctly, "As between cotenants, evidence of long-continued, visible, uninterrupted and even exclusive occupation by one cotenant, is not enough to bar the rights of the other cotenants." *Smith*, 119 A. at 197. *See also* Syl. Pt. 1, *Cooey v. Porter*, 22 W. Va. 120 (1883) ("The possession of one parcener is ordinarily regarded as the possession of all his co-parceners, and such possession being subordinate and not adverse

---

[7] *See generally*, Owen L. Anderson, *Geophysical "Trespass" Revisited*, 5 Tex. Wesleyan L. Rev. 137, 152-53 (1999) ("Because a cotenant can, in most jurisdictions, lawfully develop and produce oil and gas without the consent of other cotenants, it necessarily follows that a cotenant can explore for oil and gas without the consent of other cotenants.").

can not, however long continued, operate as a bar to his co-parceners."); *Martin v. Thomas*, 56 W. Va. 220, 223, 49 S.E. 118, 119 (1904) ("[T]he possession of one coparcener is the possession of all . . . ; his possession is not adverse to, but consistent with, the rights of his co-owners."); Syl. Pt. 1, in part, *Reed v. Bachman*, 61 W. Va. 452, 57 S.E. 769 (1907) ("Mere silent possession ever so long, by one taking rents and profits, . . . will not be adverse possession . . . ."). The only way for one tenant to seize control of the tenancy from others is through a completely different legal principle: the doctrine of ouster.

Again, I dissent because West Virginia's cases blur and conflate the concepts of adverse possession and ouster and, specifically, ignore the measure of intent required for each. Adverse possession simply does not require intent; it only requires a party to enter and hold another's land, even accidentally, and maintain control. For instance, in *Teubert Fam. Farms, LLC v. Bragg*, 242 W. Va. 445, 836 S.E.2d 412 (2019), the purchaser of a tract of land mistakenly understood the boundary of the tract was a tree line which was actually on the neighbor's property. The purchaser asserted that he had, unintentionally, adversely possessed over nine acres of the neighbor's land by posting no-trespassing signs at the tree line and by clearing, cultivating, and building ponds on the disputed acreage for more than ten years.[8]

---

[8] While the purchaser in *Teubert Farms* asserted his possession of the disputed acreage was adverse to the true owner, the SCAWV concluded that questions of fact existed as to whether the purchaser had the true owner's permission to use the disputed acreage.

9

But cases galore distinguish ouster from adverse possession by establishing the mandate that ouster requires continuous and deliberate intention by the possessing cotenant. In 1883, the SCAWV said, in Syllabus Point 4 of *Cooey v. Porter*, 22 W. Va. at 121 (emphasis in original), "It is the *intention* of the tenant or parcener in possession to hold the common property in severalty and exclusively as his own, with notice or knowledge to his co-tenants of such intention, that constitutes the disseisin." For one tenant to oust another tenant from their ownership interest, the ousting tenant must assert "a clear, positive and *continued* disclaimer and disavowal of his co-tenant's title[.]" Syl. Pt. 1, *Boggess v. Meredith*, 16 W. Va. 1 (1879) (emphasis added).

In general, modern courts that have weighed the question have more clearly found that ouster of a cotenant requires proof of intent. Cases from other jurisdictions hold that one cannot accidentally or passively oust one's cotenant from their titled ownership of land. "[W]here a cotenant attempts to dispossess the other cotenants, an actual intent to exclude the others is required." *Paletsky v. Paletsky*, 490 A.2d 545, 546 (Conn. App. 1985). *See also*, *Simons v. Tancre*, 321 N.W.2d 495, 498 (N.D. 1982) ("[O]ne cotenant may oust another, but . . . the intent to dispossess [must be] clear and unmistakable."); *Jordon v. Warren*, 602 So.2d 809, 815 (Miss. 1992) ("The cotenant in possession must effect an ouster of the other cotenant of an unequivocal nature and distinctly hostile to the rights of the other so that the intent to possess adversely is clear and unmistakable.").

A holding from the Illinois Supreme Court is instructive on the requirement of the expression of intent. In *Mercer v. Wayman*, 137 N.E.2d 815 (Ill. 1956), the plaintiffs and defendants were cotenants on a 40-acre tract. The plaintiffs, who thought they had received a quitclaim deed for a fee simple interest, "for thirty-four years, occupied the premises, paid the taxes, and improved the property," and even executed mortgages and oil leases. 137 N.E.2d at 819. The court said that "[b]efore the possession of one tenant in common can be adverse to the cotenant" there must be some notice given "that an adverse possession . . . [is] intended to be asserted by the tenant in possession." *Id.* at 818. However, aside from possession, the plaintiffs in *Mercer* "at no time affirmatively did anything that would serve as notice to their cotenants that they were claiming adversely to them. Such adverse claim as against cotenants cannot be established by inference." *Id.* at 819. The Illinois court concluded that no ouster of the defendants had occurred through passive possession.

Put simply, mere possession of jointly owned property for a lengthy period of time is insufficient. Ouster of one cotenant by another requires evidence of a deliberate intent to displace the cotenant from their ownership interest. "Before title may be acquired by adverse possession as between cotenants, the occupying tenant must bring home or impart notice to the tenant out of possession . . . *that he intends to oust the latter of his interest in the common property.*" *Preciado v. Wilde*, 42 Cal. Rptr. 3d 792, 795 (2006) (emphasis in original).

Problematically, nothing in the majority opinion or our case law accounts for the situation where cotenants are wholly unaware of the existence of their cotenancy. Nothing in the majority opinion or our case law accounts for an obvious question: how can a possessing cotenant intend to oust a non-possessing cotenant, or possess land adversely to another cotenant with the intent to disavow the cotenant's title, if neither the possessing nor non-possessing cotenant is actually aware of the existence of a cotenancy? This question of intent, or the lack thereof by Mr. Jewell and his successors, is at the heart of my dissent.

The rule is clear that an intent to oust cannot be formed when neither party is aware of the cotenancy. For instance, in *Diamond v. Boynton*, 458 A.2d 18 (Conn. Super. Ct. 1983), the plaintiff bought from the defendant what he thought was an entire fee simple estate in land. The defendant seller, however, did not realize that he was actually a cotenant with an association (which co-owned an undivided 398/12510 interest). The defendant "admit[ted] that he and his wife thought that they owned the entire property," 458 A.2d at 20, but also claimed the association's interest had been extinguished by the defendant's "adverse" possession arising from the lengthy passage of time. The court rejected this theory and stated the following rule:

> [A]ctual *intent* implies actual *knowledge,* and there can be no wrongful dispossession or wrongful exclusion, no adverse intent and adverse holding, where one is in the enjoyment of that which he honestly supposes is his, and has no knowledge that any other person has, or claims to have, a right to participate in the possession of it.

*Id.* (citation omitted). Because the defendant was a cotenant in possession who did not know either of his own cotenancy-status or of the other cotenant, the Connecticut court concluded that the defendant failed to establish "the intent required for adverse possession of the co-owner's interest." *Id.*

Similarly, in *In re Estate of Neil*, 565 A.2d 1309 (Vt. 1989), the court examined the situation of "whether co-tenants, ignorant of their interests, can be dispossessed of their rights to title through adverse possession." 565 A.2d at 1313. The petitioner was a cotenant of a tract with the parties' mother, who died in 1956. Thereafter, petitioner "posted the property, cut timber from it for his own use and for sale, ran and parked heavy equipment on it, and maintained a stump dump on the property," "paid all real estate taxes," and transferred a right-of-way to the town. *Id.* at 1311. When the petitioner tried to sell the tract in 1981, his four siblings asserted they recently learned they had inherited a cotenancy with petitioner by operation of law when their mother died. But, the petitioner claimed he had adversely possessed his siblings' share "despite their ignorance of their rights to the property." *Id.* at 1312. The Vermont court acknowledged that landowners must be reasonably attentive to their property rights, but "to be reasonably attentive to their interests as co-tenants, . . . they must first be aware that their interest in the property exists." *Id.* at 1313. The Vermont court concluded that constructive notice of adverse possession to the siblings was insufficient, because when a cotenant possesses the common property, "as he has a legal right to do, the law presumes that he intends nothing beyond an assertion of his right." *Id.* at 1312 (citation omitted). To effect an ouster of

13

cotenants, there must be actions which give notice that the possession was intentionally contrary to the rights of the other titleholders. Passive possession is insufficient to constitute an ouster.

Tennessee has a line of cases finding that "where one co-tenant holds possession and both he and the other co-tenants are ignorant of the existence of the co-tenancy," no ouster occurs until the possessing cotenant acts in a manner intended to give non-possessing cotenants notice the possession is adverse. *Denton v. Denton*, 627 S.W.2d 124, 127 (Tenn. Ct. App. 1981). Tennessee case law requires possessing cotenants act with the intent demonstrating "a hostile possession . . . to arouse [non-possessing cotenants] to active investigation and assertion of their rights and it is this which the law requires before the cotenant's presumptively friendly possession can be converted into one of a hostile character." *Id.* at 128 (quoting *Hydas v. Johnson*, 187 S.W.2d 534, 535 (Tenn. App. 1944)). In Tennessee, merely holding real estate is insufficient for one cotenant to oust other cotenants when all of the cotenants are ignorant of the existence of the cotenancy. *See also Bonds v. Bonds*, 84 So.2d 397, 401 (Miss. 1956) (there can be no ouster by possession when the possessing cotenant and non-possessing cotenant were "without knowledge of the fact that he or she is" a tenant in common.); *Hannah v. Littrell*, 200 S.W.2d 729, 730 (Ky. 1947) (cotenant's mere possession of land, living on it, cultivating it, and renting it are insufficient to constitute an ouster when "it is uncontroverted that the outstanding cotenants did not know of the existence of the tract, or of their titular interest therein until shortly before the commencement of this action.").

14

Taken together, I dissent because West Virginia's case law and the majority opinion fail to account for the fact that Antero did not offer any proof of an intent by Mr. Jewell or his successors in title to oust their cotenants, first Ms. Pike and now the Pike brothers. Mr. Jewell and his successors, including Antero, passively possessed and used the property for seven or so decades, and treated it like any generic owner would. I recognize the unfairness that Mr. Jewell's successors would feel if the Pike brothers were allowed to assert their ownership rights after so long, and that the successors are entitled to some measure of repose. But the Pike brothers are rightful owners *by title*. Antero's actions in this case seek to subvert that written, recorded title without any proof that, until 2014, any of the parties were aware of the Pike brothers' ownership interest. On remand, the circuit court (or any factfinder) should assess how Mr. Jewell and his successors formulated an intent to oust when they were unaware of the existence of the cotenancy.

Incidentally, it should be obvious that Mr. Jewell's recordation of his deed, and the recordation of the deeds of his successors, does not function as notice that Mr. Jewell and his successors intended to oust the Pike brothers from the cotenancy. As the SCAWV noted in *Pickens*, a deed only serves as constructive notice to "subsequent purchasers and creditors." *Pickens v. Stout*, 67 W. Va. 422, 432, 68 S.E. 354, 359 (1910).[9]

---

[9] *See also*, W. Va. Code § 40-1-9 (2015) ("[E]very deed . . . conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record . . . ."); *Bank of Marlinton v. McLaughlin,* 121 W. Va. 41, 44, 1 S.E.2d 251, 253 (1939) ("The purpose of the statute is to protect a *bona fide* purchaser of land against creditors of the grantor, and

15

"It was not the intent of the Legislature . . . to make it the duty of an owner of land to keep his eye upon the registry books to see whether some other person is selling his land." *Id.*

Further, I am troubled how the authority cited by the majority opinion muddies the crystal clarity provided by recorded titles. Any competent title search would have revealed that Ms. Pike and the Pike brothers were cotenants with a one-sixth ownership share of the property. The 2014 title search by Antero found the 1942 deed. West Virginia's expression of the doctrine of ouster, by not expressing a clear requirement of intent, confuses the clarity of titles and seems to allow passive occupancy of a cotenancy to accidentally evolve into full ownership, contrary to the deeds of record. In a mineral-rich state like West Virginia, where there are many absentee title owners of fractional shares of land, mineral or royalty rights, the instant case may wreak havoc. Tenants passively in possession, or who passively but silently extract minerals, may see the majority opinion as a license to terminate the tenancies or other title rights of absentee owners through adverse possession principles.

Another thing I am troubled by is this State's precedent on the degree of notice that a tenant must give another tenant regarding an intent to oust. West Virginia's cases (all from the turn of the 19th century to the 20th) say that a possessing cotenant may

---

against other persons to whom the grantor might have undertaken to execute title papers pertaining to the land embraced in the recorded instrument.")

oust a non-possessing cotenant only by giving *actual notice* of the ouster. *See, e.g.*, *Cooey v. Porter*, 22 W. Va. at 121, Syl. Pt. 5 ("The notice or knowledge required must be actual, as in the case of a disavowal or disclaimer of any right in his co-tenants[.]"). But the same cases also say ouster can be completed if the possessing cotenant offers up some sort of activity that a court might later say was sufficient to be *constructive notice*. *See Pickens v. Stout*, 67 W. Va. at 432, 68 S.E. at 359 ("[S]uch acts must be done upon the land as [the non-possessing tenant] is bound to take notice of as being hostile."). In literally one sentence of a syllabus point, West Virginia law demands a tenant claiming ouster give (1) actual notice, or (2) notorious notice, or (3) sufficient notice, to the tenant being ousted. In Syllabus Point 3 of *Clark v. Beard*, 59 W. Va. 669, 53 S.E. 597 (1906), the SCAWV stated that "[t]he notice or knowledge required must be either actual, or the act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably sufficient to put the disseised co-tenant on inquiry which, if diligently pursued, will lead to notice or knowledge in fact." In other words, the quality or proof of notice requirement is (almost) illusory, and it makes ouster of a cotenant almost indistinguishable from adverse possession. I believe the circuit court correctly divined that a higher degree of notice is due to a cotenant who might be stripped of their titled property rights. A cotenant is certainly entitled to a higher degree of notice than that required in a case of adverse possession. I believe a cotenant not in possession may lose their interest only if clear and unmistakable notice of ouster or adverse possession is actually presented, and I believe the meandering quality of the case law regarding notice warrants consideration by the SCAWV.

17

Frankly, I would have affirmed the circuit court's grant of summary judgment to the Pike brothers. The circuit court relied on the most recent statement from the SCAWV on the issue of notice in the context of ouster, from 2019, where the Court said that "[o]ur law is clear that 'mere silent possession' of land by one cotenant is insufficient to establish an adverse possession claim against another cotenant. Instead, there must be evidence that one cotenant openly sought to oust the other cotenant, and that ouster was known by the other cotenant." *Harrell v. Cain*, 242 W. Va. 194, 202 n.10, 832 S.E.2d 120, 128 n.10 (2019). The circuit court fairly concluded that, on the record presented, no notice was given to Ms. Pike or the Pike brothers. At no time did Mr. Jewell or his successors affirmatively do anything that would serve as notice to their cotenants that they were claiming adversely to them. An adverse claim as against cotenants cannot be established by inference. Antero failed to identify any "notorious act of ouster brought home to [the Pike's] knowledge." Syl. Pt. 8, *Jarrett v. Osborne*, 84 W. Va. 559, 101 S.E. 162 (1919). Hence, I believe it was error for this Court to reverse the circuit court's well-reasoned order.

Lastly, I am confounded by this State's numerous precedents (again, issued at the turn of the 19th to the 20th century) using the term "stranger" in the context of a cotenancy, as though "stranger danger" was a formal common-law concept of property or cotenant law. A search of the authorities shows the term disappearing from our cotenancy ouster cases after 1930. *See Laing v. Gauley Coal Land Co.*, 109 W. Va. 263, 267-68, 153 S.E. 577, 579 (1930) (citing *Boggess v. Meredith*, 16 W. Va. 1 (1879)). Yet the majority

18

opinion applies this term, and repeatedly describes Mr. Jewell as a "stranger" without "privity" despite the deeds of record showing his five-sixths entitlement to the property, and Ms. Pike (and later her sons) having a deed showing a one-sixth interest. The majority opinion reads West Virginia case law as saying that the proper manner for giving notice of ouster is malleable: cotenants who oust family "in privity" must give actual notice, while cotenants by title who are not family are indistinguishable from adverse possessors and may oust while giving no notice.

First, I think this distinction in our case law misapplies the term "privity," because "[p]rivity is said to be a mutual or successive relationship to the same rights of property[.]" *Edward F. Gerber Co. v. Thompson*, 84 W. Va. 721, 727, 100 S.E. 733, 735 (1919). Accord, Syl., *Cater v. Taylor*, 120 W. Va. 93, 196 S.E. 558 (1938) ("Privity, in a legal sense, ordinarily denotes [a] 'mutual or successive relationship to the same rights of property.'"). West Virginia law is clear that the 1949 deed imposed a tenancy in common on Mr. Jewell and Ms. Pike. *See* Syl. Pt. 4, *Herring v. Carroll*, 171 W. Va. 516, 300 S.E.2d 629 (1983).[10] As tenants in common, Mr. Jewell (and his successors) were, in every legal

---

[10] Creation of a common law joint tenancy required the parties to receive an undivided interest under four conditions, "the four unities of time, interest, possession and title." Syl. Pt. 1, *Herring*, 171 W. Va. at 517, 300 S.E. at 630. If any one of these unities was destroyed, usually through a joint tenant's conveyance of his undivided interest to a third person, the joint tenancy was severed and became a tenancy in common, and the tenants' right of survivorship ceased to exist. *Id.* at 519-520, 300 S.E.2d at 632-33. Because Mr. Jewell was not a member of the original joint tenancy with right of survivorship that Ms. Pike held with her family through the 1942 deed, the right of survivorship ceased to exist, and Mr. Jewell became a tenant in common with Ms. Pike.

sense, in privity with Ms. Pike (and her successors, the Pike brothers) because they all had the same successive rights to the property.

Second, I cannot find a legal definition for a "stranger" to a tenancy in common. The closest definition I could find was in the "stranger to the deed" rule, but that rule speaks only to "strangers" who are not the grantor or the grantee to a deed and who are identified as receiving some property interest in a reservation or exception.[11] The concept of a "stranger" to a tenancy in common may have made sense in the wake of sorting out overlapping, unclear ownership rights in the wake of the Civil War and West Virginia's secession from Virginia. However, it makes no sense in the modern day, particularly with so many cotenancies owning fractional property interests tied to minerals or royalty rights.

---

[11] West Virginia observes the "stranger to the deed" rule. *See* Syl. pt. 3*, Erwin v. Bethlehem Steel Corp.*, 134 W. Va. 900, 62 S.E.2d 337 (1950). The SCAWV recently discussed the rule:

> The "stranger to the deed" rule derives from feudal interpretations of deeds. The rule presumes that deeds conveying land are between a grantor and a grantee, and views with distrust any attempt to use the deed to create a property interest in any other party – that is, a "stranger." Strangers to the deed are those who are not parties to it. The long-established rule in many jurisdictions is that, in a deed, a reservation in favor of a stranger to the instrument creates in that stranger no new right or interest in the property. . . A reservation of interest in real property, to be good, must be made to all, some, or one of the grantors, and not to a stranger to the deed.

*Klein v. McCullough*, 245 W. Va. 284, 288, 858 S.E.2d 909, 913 (2021) (cleaned up).

20

While I dissent regarding the majority opinion's use of law regarding notice and ouster of a cotenant, I agree with the majority opinion's assessment that Antero has standing to pursue a declaratory judgment. Put simply, Antero has a "dog in this fight" because it has something to lose: its leases to extract oil and gas from the disputed property. It also stands to lose money, because the Pike brothers allege that Antero is wrongfully taking their oil and gas royalties and, so, they are threatening Antero with money damages. To that limited extent, I concur with the majority opinion.

In summary, I respectfully concur, in part, and dissent, in part, to the majority opinion.